## VAN KANNELL REVOLVING DOOR CO. v. REVOLVING DOOR & FIXTURE CO.

(District Court, S. D. New York. April 16, 1920.)

1. Patents ⬅️260—Not infringement to contract for thing covered by patent, when not furnished.

It was not an infringement for competitor of owner of patent to propose to sell an infringing door, and before installing it to induce the purchaser to modify his requirements, so that it would not infringe.

2. Patents ⬅️319(1)—Not entitled to damages on accounting, unless recoverable at law.

Accountings for damages in suits for infringement are only to avoid actions at law, and to close up all the rights of the parties in one suit, and no recovery can be had of damages in a suit for infringement, unless the plaintiff could have recovered such damages in an action at law.

3. Patents ⬅️318(1)—Loss of profits from lowering bids held not "damages" arising from infringement.

Loss of profits on contracts to obtain which owner of patent was compelled to lower his bids, because defendant bid to furnish infringing article, are not "damages" arising from infringement, because defendant did not infringe, where he did not get the jobs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage—Damages.]

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⟨⟩318(6)—Infringer cannot credit profits on one job with losses of another.**

An infringer of a patent cannot credit his profits on one job with his losses on another.

In Equity. Suit by the Van Kannell Revolving Door Company against the Revolving Door & Fixture Company. On exceptions to master's report. Recalculation of damages ordered.

Mock & Blum, of New York City, for plaintiff.
Cox, Kent & Campbell, of New York City, for defendant.

LEARNED HAND, District Judge. There have been no exceptions at all, properly speaking, to the master's report, but both sides have consented to treat the execeptions filed to the draft report as equivalent to exceptions to the report proper, and on that stipulation I shall dispose of the case.

[1] The defendant presses only exceptions II, IV, V, and VI. Exception II goes to the question whether it was an infringement for the defendant to take away from the plaintiff a contract calling for a door covered by the patent, and later to change the structure so that it did not infringe. The exception raises merely a point of law. That point is whether it was itself an infringement to propose to a third person to sell an infringing door, and before installing it to induce him to modify his requirements, so that it shall not infringe. The defendant under these circumstances neither made, sold, nor used the patented door. Now a patent confers an exclusive right upon the patentee, limited in those terms. He may prevent any one from making, selling, or using a structure embodying the invention, but the monopoly goes no further than that. It restrains every one from the conduct so described, and it does not restrain him from anything else. If, therefore, any one says to a possible customer of a patentee, "I will make the article myself; don't buy of the patentee," while he may be doing the patentee a wrong, and while equity will forbid his carrying out his promise, the promise itself is not part of the conduct which the patent forbids; it is not a "subtraction" from the monopoly. If it injures the plaintiff, though never performed, perhaps it is a wrong, like a slander upon his title; but certainly it is not an infringement of the patent. Luten v. Town of Lee (D. C.) 206 Fed. 904. And while equity forbids the carrying out of the promise, equity does not thereby adjudge the promise to be a wrong, but only evidence of a proximate wrong; i. e., infringement. To procure an adjudication that the promise is a wrong, and its accompanying injunction, the plaintiff must rest his case, not upon any subtraction from the monopoly, but upon an injury analogous to injuries arising from similar conduct which affects the value of any kind of property.

[2] Now, accountings for damages in suits for infringement are to avoid actions at law, and to close up all the rights of the parties in one suit. The accounting for profits is of purely equitable cognizance, and depends upon the theory that the defendant is a trustee ex maleficio of the plaintiff's property. Unless, therefore, the plaintiff could have

recovered such damages in an action at law for infringement of the patent he cannot recover them here. There is another reason, moreover, for this result. In order to establish his damages in any aspect, the plaintiff must show that he lost the contract, not because the defendant successfully bid against him, but because the patentable features were essential to his success. It must show that they were critical elements in deciding the choice of the owners of the buildings. Yet on all these jobs it appears that the defendant did not finally need to use the invention in order to hold the job, because, while he did in fact secure the contract by offering to infringe, he persuaded the owner to accept an innocent substitute. The plaintiff, on whom the burden of proof rests, must therefore show that it was the invention, and not a substitute, whose acceptance he later induced, which determined the defendant's success. This must generally remain a doubtful conclusion, unless the defendant tried to get the contract without that element, and failed.

To this the plaintiff answers that it is entitled to the presumption, whatever may have been the event, that the defendant could not originally have got the contract, had he not bid upon the specifications as submitted. But this I think is a conclusion which is by no means necessary in cases where the owners eventually consent to the substitute. It seems to me impossible in such cases to say a priori whether the defendant would or would not have been able originally to persuade the owners to accept a contract without the invention. This uncertainty, which is inherent in respect of some, at least, of these contracts, necessarily makes it doubtful whether the defendant took away from the plaintiff those contracts because the invention was a condition precedent to his success. It is not necessary to do more than throw a doubt upon this aspect of the exception, nor have I examined the evidence with a view of learning in respect of which jobs the plaintiff has carried the burden of showing that the defendant could not have got the contracts without promising to infringe, because I think the inquiry immaterial to an accounting for damages for infringement. If the plaintiff chooses to amend its bill, so as to include this new aspect of the case, it is possible that the jurisdictional features may exist, and that it may be even now incorporated into this litigation; but upon the record as it stands the second exception is sustained.

The fourth exception rests upon the theory that the patent covers only the wings, pintle, and chains, but does not cover the casing. This clearly is not the proper scope of the claims. It is quite true that Van Kannell's original patent, which is now a part of the art, included the wings and the casing, and that the new element in the patent in suit was only the collapsible wings and the chain, automatically released; but the patent was not for the wings and chain, but for these in combination with the casing. I do not understand that any of the contracts included more than this combination, together with such trim as was necessary to fill in between the casing and the jambs and lintels. The whole job was contracted for as a unit, and the case is therefore one in which the defendant is obliged to disentangle the profits on this subsidiary trim from those on the combination as a whole. In short,

the patent was not for an improved detail of a structure, but for the structure; so the claim reads. The unpatented part was an incident only. I agree that the distinction is one of degree, but that very well fits the rule which only throws the burden of proof on one side or the other. This is a case where the plaintiff has the advantage, because the nonpatented part is relatively unimportant, compared with the patented part.

The fifth exception is covered by the second.

[3] The sixth exception relates to the plaintiff's loss of profits on contracts in which they were compelled to lower their bids. The profits so lost are not damages arising from infringement, because the defendant never got the jobs, and did not therefore infringe. Incidentally while there is possibly enough evidence as to job No. 4, I can find nothing to contradict Ely's testimony that he did not bid for panic-proof floors upon job No. 17. The plaintiff did; but that is not the point in any aspect.

[4] The plaintiff's exception relates to the master's refusal to charge the defendant with his own profits. It is, of course, the law that an infringer cannot credit his profits on one job with his losses on another. Crosby Co. v. Safety Valve Co., 141 U. S. 441, 457, 12 Sup. Ct. 49, 35 L. Ed. 809; Canda Bros. v. Mich. Mal. Iron Co., 152 Fed. 178, 180, 81 C. C. A. 420. The master says in his report that the plaintiff had waived any claim to the defendant's profits, but the exception to the draft report shows that it had recanted. I suppose that the waiver was not binding on the plaintiff, and it is entitled to claim the amount, if ascertainable. The same rule applies as to apportionment of profits as applies to the plaintiff's damages, but the plaintiff will be entitled to profits only on such jobs as contained the infringing doors.

After Judge Hunt's opinion the defendant continued to infringe. This must be taken as deliberate, whether the defendant took advice or not. I will award as punitive damages $750.

This opinion will require the parties to make a recalculation, but will not, I think, require any new reference. The plaintiff will tax the expenses of the reference as part of his costs.