## HEINE v. NEW YORK LIFE INS. CO.
### No. 6405.

Circuit Court of Appeals, Ninth Circuit.
May 25, 1931.

C. T. Haas and E. B. Seabrook, both of Portland, Or., for appellant.

Huntington, Wilson & Huntington and Clark & Clark, all of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge (after stating the facts).

■ The agency in Germany was established as a distinct entity, a German creation under German law. A reserve fund was made and all premiums received were placed in that fund and invested in Germany under German official approval. Upon creation of "Kronos," all funds and property of appellee in Germany were delivered to and supervision and execution of power assumed by the German Federal Insurance Board, and additional deposits made by the appellee, as required by the German valorization laws, in accordance with the decisions of the German Federal Insurance Board. The laws in relation thereto have been interpreted to apply to like policies, and many similar cases are now pending before the German courts, they being open, able, competent, and efficient, and the German Federal Insurance Board being active and fully functioning.

It is obvious that this litigation is not the normal outgrowth of usual business activity and relation, but that it is the creation of activity to secure representation of some 28,-000 insurance policies executed in Germany by American companies, written in the German language, in the relation of collection agent or agencies, and file actions thereon in the state and federal courts of the United States, an indirect appeal from the German judiciary and the German Federal Insurance Board.

■ Incidentally, it may be said that the courts of the United States have uniformly applied the law of the place to insurance contracts. Orient Insurance Co. v. Daggs, 172 U. S. 557, 19 S. Ct. 281, 43 L. Ed. 552; Mutual Life Ins. Co. of N. Y. v. Cohen, 179 U. S. 262, 21 S. Ct. 106, 45 L. Ed. 181; Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24 S. Ct. 538, 48 L. Ed. 788; Northwestern Mut. Life Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

And, when suit was entertained, the cause of which arose in a foreign country, the courts granted relief according to the laws of the country where the action arose. Slater v. Mexican Nat. Ry. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900. It has been held that discharge under a foreign obligation in accordance with the foreign law is a complete defense. Zimmerman v. Sutherland, 274 U. S. 253, 47 S. Ct. 625, 71 L. Ed. 1034. It has also been held that the courts of the United States will not inquire into the validity, wisdom or justice of the laws of a foreign country, or the administration of foreign agencies. League v. De Young, 52 U. S. (11 How.) 185, 13 L. Ed. 657; Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 27 L. Ed. 1020; Underhill v. Hernandez, 168 U. S. 250, 18 S. Ct. 83, 42 L. Ed. 456; Hewitt v. Speyer (C. C. A.) 250 F. 367.

Nor does it appear that enlarged rights may be obtained over the German law should a suit by a policyholder be entertained by the courts of the United States. Sutherland v. Mayer, 271 U. S. 272, 46 S. Ct. 538, 70 L. Ed. 943; Deutsche Bank v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383; see, also, Zimmerman v. Sutherland, supra. Such holding is in harmony with other courts. See, Chesterman's Trust, (1923) 2 Chancery 466, where the court had before it a debt payable in German marks which had greatly depreciated, and it was held that it might be paid in the depreciated marks or in their exchange value converted into British currency. The same rule was applied in British Bank v. Russian Bank, (1921) 38 Times Law Reports 65, in which Mr. Justice Russell said that he "had great sympathy with the defendants, but it must be remembered that the same causes that caused the fall in the value of roubles had produced great depreciation in the plaintiff's securities." This was approved in Anderson v. Equitable Assurance Society, (1926) 134 Law Times 557.

■ It is asserted by appellant that, jurisdiction being apparent on the face of the record, it may not be challenged by motion but must be by plea, and that when, as here, jurisdiction is challenged by plea, by the answer, and put in issue by the reply, issue must be submitted to the jury for decision on the merits, and that there is no precedent for the order of the trial court.

As to the last objection, to have a precedent there must be an antecedent case; but the lack thereof does not defeat a right or privilege. No fault can be found with the cases cited by the appellant, the following of which are the more prominent: Farmington v. Pillsbury, 114 U. S. 138, 5 S. Ct. 807, 29 L. Ed. 114; Hartog v. Memory, 116 U. S. 588, 6 S. Ct. 521, 29 L. Ed. 725; Mexican Central Railway Co. v. Pinkney, 149 U. S. 194, 13 S. Ct. 859, 37 L. Ed. 699; City Railway Co. v. Citizen's Street Railroad Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 1114; Union Mutual Life Insurance Co. v. Kirchoff, 169 U. S. 103, 18 S. Ct. 260, 42 L. Ed. 677; York County Sav. Bank v. Abbot (C. C.) 131 F. 980. These cases do not point the way. One sustains dismissal when the fact appears to a legal certainty; another, where a party is collusively added; another holds that the evidence considered must be pertinent to the issue, or to the inquiry by the court; another holds that where there is reasonable plausibility of bona fide claim, jurisdiction will be passed to trial on the merits, and another is one where the court holds that claim rightly viewed unfounded must be denied.

Every requirement appears to be met substantially by the record. Process in this case was served upon the statutory agent of the appellee in Oregon, appointed as a condition to do business in that state and for the convenience and protection of residents to whom policies may be issued and afford them access to the courts of the state or district.

■ The appellant contends that, notwithstanding the agreement that the German courts shall have exclusive jurisdiction, such agreement is not binding on the federal courts, vested with their jurisdiction by the United States Constitution, of which they cannot be deprived by foreign laws or agreement. The appellant also contends that these are not actions upon the policies. But, whatever the designation may be, the basis is the policies.

No alien has a constitutional right to sue in the United States courts. Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077. The United States District Courts have such jurisdiction as the Congress confers. 28 USCA § 41, grants jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity * * * between citizens of a State and foreign States, citizens, or subjects. * * *

"Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy. * * * "

Civil cases and actions in admiralty and maritime jurisdiction have equal status, and the courts have uniformly, where the question has arisen, declined to entertain jurisdiction in admiralty suits by nonresidents when in the discretion of the court it would be inconvenient and inexpedient to do so. And no distinction has been made to civil cases.

Nor is the right to challenge the jurisdiction or to invite the discretion of the court waived or forfeited by removal from the state to the federal court, or the right of the court, after issue joined, to make investigation on notice and, in its discretion, decline jurisdiction after such inquiry. 28 USCA, § 81, provides that in all suits removed the court shall proceed as if the suit had been originally commenced in the district court and the same proceedings had been taken in such suit in said district court as shall have been had therein in said state court prior to its removal.

Upon the face of the record the district court had jurisdiction when the case came to it from the state court. When the issue first came to its attention, and upon inquiry and examination, the court became cognizant of the status and relation and no doubt had inherent power to protect itself from a deluge of litigation by nonresidents, inspired by contingent retainers to avoid or overcome foreign laws and interpretation and application thereof by foreign courts of the country of the situs of the contract; and it had the power to prefer resident litigants of the district in access to overcrowded calendars, for, as Justice Holmes said in Douglas v. New York, N. H. & H. R. Co., 279 U. S. 377, 387, 49 S. Ct. 355, 356, 73 L. Ed. 747: "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned"; and it had the power to prevent imposition upon its jurisdiction and use of the court as a "cover for injustice to the defendants" (Cuba R. Co. v. Crosby, 222 U. S. 473, 479, 32 S. Ct. 132, 133, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40) by reason of the enormous expense involved in bringing across the continent witnesses from Germany and New York and the records of appellee which plaintiff demands as necessary in another case and, if so, must also be necessary in this case, the removal of which would destroy the ability of the appellee. representing more than 2,500,000 policyholders, to function.

Comity between the United States and Germany should also have consideration.

With the foregoing, nothing can be added to the opinion of Judge Robert S. Bean, who at the time of his recent demise was the dean of the American bench, and whose death terminated a creditable judicial career of more than forty-eight years on the state and federal bench. His opinion is reported in (D. C.) 45 F.(2d) 426, and is adopted as a part of the opinion of the court.

Affirmed.