**Titus G. LE CLAIR, Plaintiff,**

v.

**SHELL OIL COMPANY, Defendant.**
**Civ. A. No. 2584.**

United States District Court
S. D. Illinois, S. D.
May 3, 1960.

Drach, Howorth & Terrell, Springfield, Ill., Morris Spector, Chicago, Ill., for plaintiff.

Brown, Hay & Stephens, Springfield, Ill., Leonard L. Kalish, Philadelphia, Pa., for defendant.

POOS, District Judge.

This is a suit brought by plaintiff, Titus G. LeClair, against the defendant, Shell Oil Company, for patent infringement by user. The complaint alleges that defendant, Shell Oil Company, is a corporation of the State of Delaware, and has a place of business in Wood River, Madison County, State of Illinois. The plaintiff charges the infringement of two patents issued to him by the patent office, and the prayer is for a preliminary and final injunction against further infringements by defendant and those controlled by defendant, an accounting for profits and damages, and an assessment of costs and attorneys' fees against defendant.

The defendant denies the infringement for various reasons, and says that the patents sued on are invalid and void.

The complaint was filed October 23, 1958, and the answer was filed on June 23, 1959.

On December 11, 1958 defendant, Shell Oil Company, filed its motions as follows:

(A) to transfer the case under 28 U.S.C.A. §§ 1406(a), or 1404(a), and

(B) to dismiss for lack of jurisdiction under 28 U.S.C.A. § 1400(b).

Under (A) the motion was for transfer to the District Court of Delaware, or to the District Court for the Eastern District of Pennsylvania; and under (B) the motion was to dismiss for lack of jurisdiction and was in the alternative to the grounds alleged in subdivision "A" of the motion. The motions set out that defendant intends to rely on plaintiff's testimony to be adduced on oral deposition taken under Rule 26, F.R.Civ.P., 28 U.S.C.A. in accordance with the notice served and filed simultaneously with the motions, and such other evidence, adduced by deposition or by affidavit, as plaintiff's testimony may indicate. Included with the motion are the affidavits of Joseph G. Wilson, G. Clement. Cunningham, Kermit Fischer and Oliver L. Stone. On June 23, 1959, when defendant filed its answer as above mentioned, it also filed on the same day the additional affidavit of Leonard L. Kalish and a supplemental affidavit of Kermit Fischer.

The affidavit of Leonard L. Kalish, prominent attorney with vast experience in various patent litigation in many patent suits in the United States Courts, both trial and appellate, states that he has examined the alleged infringed patents concerning the "data logger" involved in this case, and that it is his considered opinion based upon his familiarity with the accused "data Logger", plaintiff's patents and the prior art, and from his experience gained in the trials of many patent cases, that a demonstration of the accused "data logger" is necessary to a proper defense

trial of this action to enable the court to determine the issues of infringement as well as other issues. The effect of the affidavit of Oliver L. Stone, an officer of Shell Oil Company, defendant, is to consent on behalf of his company to transfer the case to the Eastern District of Pennsylvania. The affidavit of Kermit Fischer, President of Fischer and Porter Company, the holder of patents which it is alleged infringe on the alleged patents of plaintiff, admits that his company, under its patents, manufactured the "automatic printing and metering system", which, at one time, was installed in the plant of defendant at Wood River, Illinois, in this District. This affidavit denies that the "data logger" infringed on plaintiff's patents. It recites the dismissal of a similar suit by the District Court for the Northern District of Illinois for want of jurisdiction and further states that Fischer and Porter Company sold a "data logger" for installation at Shell Oil Company's Wood River Refinery at Wood River, Illinois, which it shipped to this location on January 24, 1957, and that it was installed there in February of 1957, and that it was returned on Nov. 26, 1958 by Shell Oil Company to Fischer and Porter Company at Hatboro, Pa., place of manufacture; that while in the plant at Wood River in testing, installing and operating the "data logger", said Fischer and Porter Company's engineers and technicians spent several hundred man hours; that these engineers and technicians reside in or near to Hatboro, Pa.; that it was necessary in the installation, testing and adjusting the "data logger" for Fischer and Porter Company, to make numerous items of auxiliary or modifying components for the "data logger"; that a similar "data logger" can be made available at Hatboro, Pa. at any time and can be demonstrated there, but to bring the machine to Springfield, Illinois, for demonstration in evidence would require an expenditure of $10,000 in assembling, shipping, handling, reassembling and labor cost; that a demonstration is necessary and will involve testimony of said company's research and engineering staff, and a heavy drain on its staff to make them available in defendant's defense of the suit here, and it would be unduly and oppressively burdened to try the case here. The affidavit of G. Clement Cunningham, Superintendent of defendant's plant at Wood River, Illinois, a resident of Edwardsville, Illinois, states that a "data logger" was delivered at the Wood River Refinery by Fischer and Porter Company of Hatboro, Pa., in early February 1957, and was put into operation by two Fischer and Porter Company employees who assisted in startup, and the "data logger" was last operated on June 19, 1958; that it remained connected but inoperative from this date until Nov. 26, 1958, at which time it was shipped back to Fischer and Porter's plant at Hatboro, Pa.; that some time in March or April, 1957, an official of Union Electric Company, the supplier of electrical energy at the plant, approached him for the purpose of arranging a visit to the refinery by an official of the Commonwealth Edison Company, by name LeClair, who was interested in viewing the Fischer and Porter Company's installation of its "data logger"; that the visit was agreed to in principle at that time, but was delayed because the "data logger" was not then in good working order; that on March 11, 1958 he received a telephone call from Mr. LeClair who was in Chicago, asking for a date so that he and another employee of Commonwealth Edison Company could visit the refinery; that as a result of this call he arranged for a visit to the plant on March 21, 1958; that shortly after the telephone call he received a letter confirming the visit. This letter was written on the letterhead stationery of Commonwealth Edison Company of Chicago, Illinois, and the message is as follows:

"I very much appreciate the opportunity to look at the Fischer and Porter digital recorder on March 21st. I will also bring along Mr. Tom Kroeschell, the engineer, who is attending to laying out a scheme

for recording all of the information on the operation of a coal-fired electric power plant.

"While there are substantial differences between the oil business and the power business, nevertheless we need to record pressures, temperatures and integrated steam and water flows which presumably are similar to flows of oil and gases.

"We plan to come down the night before and arrive at the plant shortly after 9:00 A.M. unless we hear from you to the contrary.

"Sincerely yours,
"T. G. LeClair
"Manager of Research and Development"

This letter is identified as defendant's Exhibit 21 in the deposition of Titus G. LeClair taken on behalf of defendant on January 10, 1959; that as a result of the telephone call and the letter, Mr. LeClair and Mr. Kroeschell came to the refinery and were shown the Fischer and Porter "data logger" and its installation in connection with defendant's instruments at the refinery; that LeClair and Kroeschell were given a copy of our Mr. Willis J. Dessinger's report of March 20, 1958, entitled "The data logger at Platformer 2", which report is identified as defendant's Exhibit 23 in the deposition of Titus G. LeClair, and that they were also given photographs of the "data logger", which photographs are identified as defendant's Exhibits 24, 25 and 26 in the same deposition.

Mr. LeClair telephoned G. Clement Cunningham, Superintendent of Shell Oil Company, from Chicago on March 28, 1958, and said that as a result of his visit to the refinery he was instituting a suit against Shell Oil Company for the use of the Fischer and Porter equipment which he said he felt infringed his patents; that he had no quarrel with the Shell Oil Company, but that his attorney apparently felt that the filing of such suit against the Shell Oil Company was his best course of action in order to force some action on the part of Fischer and Porter. He further said that notice of the suit would probably go to the Shell Oil Company's Chicago office, and that he would send us a copy of each of the two patents which he claimed were infringed; that shortly thereafter he received a letter from Mr. LeClair dated March 28, 1958, reading as follows:

"Following our discussions, enclosed are copies of Patent Nos. 2,-313,752 and 2,366,913, which will be of interest to you,"

which letter is identified as defendant's Exhibit 27 in the LeClair deposition; that there had been no "Fischer & Porter data logger at the Shell Oil Company's refinery since November, 1958." The affidavit of Joseph G. Wilson relates the dismissal of the prior suit in the Northern District of Illinois; the necessity of a demonstration at the trial of the "data logger"; that it has not been at the Wood River Refinery since November 26, 1958, at which time it was returned to the Fischer and Porter Company, it only having been operated at the plant from February 1957 to June 19, 1958.

The matter, as it presently stands, is before the Court for the transfer of the case to the Eastern District of Pennsylvania, or to the District of Delaware, or to dismiss for lack of jurisdiction, or whether or not jurisdiction shall be assumed which the Court can raise itself.

This cause was heard on oral argument and the Court asked for briefs which were submitted. Thereafter the Court requested information from the attorneys for the respective parties concerning the question of damages in an action at law, and as to whether or not the defendant was presently using or contemplated in the future any use or purchase of the Fischer and Porter Company "data logger". The defendant answered that it was no longer using it and did not contemplate any future use or purchase of the "data logger".

Plaintiff concedes that the "data logger" in question has been returned to Fischer and Porter Company at Hatboro, Pa. The record as it stands shows

that defendant never completed the contract to purchase the accused "data logger". The "data logger" was at the Hartford, Illinois Refinery of defendant located in this district on trial installation. It never performed within the meaning of the proposed purchase contract, and for that reason was returned to Fischer and Porter Company. The contract of purchase was terminated and cancelled.

On the argument of the motion to transfer, plaintiff stated that the amount of money which plaintiff could recover from defendant on account of defendant's try-out or experimental use of Fischer and Porter's "data logger" is in and of itself not sufficient to justify bringing of this action or the great expense of its trial; that the economic justification for this suit is not primarily to seek money recovery from the defendant, but rather the honest desire to obtain an adjudication of the patents for the protection of the so alleged patent rights under the Letters Patent issued to him. Likewise plaintiff's deposition testimony in this record is that he instituted litigation, both the earlier action in the Northern District of Illinois as well as the present action here, as a means of putting pressure on Fischer and Porter Company to enter into a license agreement with plaintiff.

It is apparent that the purpose of plaintiff is to bring Fischer and Porter Company into the jurisdiction of this court for the sole purpose of litigating a patent infringement suit, and not because of the experimental use of the machine by defendant, or to have the patent infringement litigated through the means of a user suit if Fischer and Porter Company joins in the suit. Fischer and Porter Company refuse to join in the litigation here.

■ Defendant moves this Court to transfer the cause under the provisions of 28 U.S.C.A. §§ 1404(a) or 1406(a), or to dismiss under the provisions of 28 U.S.C.A. § 1400(b), and the plaintiff resists this motion.

Section 1404(a) provides:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This section of the statute was drafted, as shown by the reviser's notes, in accordance with the doctrine of forum non conveniens and merely makes statutory the doctrine of forum non conveniens. Levenson v. Little, D.C., 81 F.Supp. 513, and Pascarella v. New York Central R. Co., D.C., 81 F.Supp. 95.

Under the facts as herein recited, the first investigation in the mind of the Court is to determine whether or not jurisdiction should be assumed. There are two parties to this suit, the plaintiff, and the defendant. The person to whom this suit is actually directed, Fischer and Porter Company, is not before this Court. Venue jurisdiction cannot be obtained here because it is a resident of Pennsylvania and actually has its factory at Hatboro, Pa., in the Eastern District thereof.

This suit on its face seeks injunctive relief for the alleged infringement of a patent. The suit may be brought here, if the requirements of Sec. 1400(b) are met. This Section provides:

"1400(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

The defendant corporation is chartered under the Laws of the State of Delaware, and under the allegations of the complaint has a place of business in Wood River, Madison County, Illinois. The allegations of the complaint are that the defendant committed acts of infringement of the alleged patent by user at its plant or refinery. The further allegations of the complaint are that plaintiff is a resident of Illinois, and that the suit

arises under the patent laws of the United States.

The Court has carefully studied the complete record before it with an intention to determine whether or not the contested motion to change the venue should be granted or whether or not jurisdiction should be assumed, and in pursuance of the study it has become necessary to thoroughly investigate the law on the subject.

■ One part of the motion is to transfer this case to the Eastern District of Pennsylvania. The parties concede on oral argument that under the factual situation here presented there is no authority under the statute, Section 1400(b) above quoted, to transfer this case to the Eastern District of Pennsylvania. This is true because defendant is not a resident of and did not commit alleged acts of infringement in this district. This district of Pennsylvania would of course be the proper district as far as acquiring jurisdiction over Fischer and Porter Company is concerned, but plaintiff has not elected to go into this district. He cannot, if he does not choose, be required to sue this defendant in that district. Accordingly, this feature of the motion to transfer is denied.

■ In determining whether or not the cause should be transferred to the District of Delaware, the court should consider whether the doctrine of forum non conveniens should be applied in the light of the private interest of the parties, the motive in bringing the suit, relative ease of access to sources of proof, whether or not all parties necessary to a complete and final judgment are before the court by service of process or entry of appearance, availability of compulsory process for attendance of unwilling witnesses, possibility of view of the machine, if appropriate, relative advantages and obstacles to a fair trial, and all other practical problems that make the trial of a case easy, expeditious and inexpensive, as well as the enforcibility of any judgment obtained, but unless the balance is strongly in favor of the defendant,

the plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. Under the record here, with the concession of plaintiff that its purpose in bringing suit against defendant is to pressure a party, namely, the Fischer and Porter Company, a Pennsylvania Corporation, over which this Court could never acquire jurisdiction by process, it is clear that plaintiff has failed in its purpose because Fischer and Porter Company has refused to submit itself to jurisdiction in this cause. The purpose of plaintiff will accomplish nothing in so far as an adjudication of his patent rights are concerned, but he will at most only have a right to insignificant or nominal damages as to defendant.

The Court further points out that the District Court of Delaware has no authority to pass its process out of Delaware and bring the Fischer and Porter Company into the jurisdictional limits of its borders.

The situation would be quite different if Fischer and Porter Company had entered its appearance here. Then this Court would have something specific to transfer to the District of Delaware. As the matter now stands only the plaintiff and defendant are before this Court. The defendant is not the owner of the accused infringing patents. It only used the "data logger" on trial to determine its utility. The machine failed and it was returned to the manufacturer and the proposed sales contract cancelled and terminated. While it would be more convenient to defendant, as it says, to transfer the cause to the District of Delaware, it would also be inconvenient for plaintiff because of the great distance from his home. However, the great expense of money and man hours necessary to reassemble the machine here, the money expenditure of admittedly $10,000, is another factor to be considered in the light of all the surrounding circumstances. The plaintiff concedes that it would take two months of man hour time to reassemble and move the machine to Springfield. The plaintiff also concedes that

he has "no quarrel" with defendant and that there is no economic benefit to this suit unless the patent rights between him and Fischer and Porter Company can be determined. The plaintiff is not a manufacturer of "data loggers". The machine that he contemplates by his patents is not in existence. He relies on only the bare claims in his patents. It follows that he would not have to go to the great expense of assembling a machine to try his case. It appears from all the facts that defendant is a scapegoat to pressure it into bringing in the real person against whom a judgment of prior patent rights could be entered with finality. The plaintiff also concedes that the defendant is no longer using the machine and the defendant states that it has no intention of repurchasing or ever reusing the machine at its refinery, either in this district or any place else. The plaintiff, and Fischer and Porter Company, will be better off if and when the alleged infringing claims are settled by a judgment that speaks finality, but to accomplish this Fischer and Porter Company must be a party defendant. There is a district court that could enter this kind of judgment and effectively dispose of the patent rights, namely the Eastern District of Pennsylvania, of which Fischer and Porter Company is a resident. The plaintiff would necessarily have to invoke the jurisdiction of this court. He does not at this time choose to do so, he, having filed his suit here. He admits that the suit was so filed for the purpose of putting pressure on Fischer and Porter Company to have the rights adjudicated here. As above pointed out, his pressure purpose has failed. Neither this court nor the District of Delaware, as the case now stands, could effectively dispose of the basic question involved.

 It is the policy of the law to so render judgments that will finally end litigation. This suit was commenced here with a hope that this could be done. However courts do not operate in this manner. The law requires that a defendant must be sued in the venue of this residence unless jurisdiction is acquired by virtue of a statute, and in particular as here by virtue of Section 1400(b). This section does not reach Fischer and Porter Company, and under this section it must necessarily be sued in the district of its residence.

The venue section, 1404, was revised to permit district courts to transfer cases from one district to another, effective June 25, 1948. Paragraph (a) says:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

 This statute says, "may transfer any civil action". It is not mandatory but only authorizes transfer in a proper case. However one is met with the further words of the statute, namely, "in the interest of justice". These words have a meaning. The government goes to great expense when it provides judges, courts, courtrooms, court officers, the expense of maintaining buildings where courts are held, juries, etc. It does this in order to make justice work expeditiously and with fairness under the law. Justice would most certainly frown upon a situation as confronts us here. Justice most certainly intends that an end be put to all litigation. Certainly the expense to government must be taken into consideration when the above words of the statute in question are read, especially where it is conceded as here, that this suit, lacking Fischer and Porter Company as a defendant, cannot put an end to the litigation. Furthermore Fischer and Porter Company have a right to be sued in a court of proper venue. This Court believes that the requirement of these words of the statute, "in the interest of justice", are not met.

The further words of the statute, "to any other district * * * where it might have been brought", also have a meaning. This suit could have been brought in the District of Delaware as to the defendant here, but it could not have been brought there as far as Fischer

and Porter Company is concerned. Without the Fischer and Porter Company the court of the District of Delaware could not, by its judgment or decree, put an end to this litigation.

In the case of Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, it is said:

> "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself."

This case was decided prior to the amendment codifying the doctrine of forum non conveniens under Section 1404, Title 28 U.S.C.A. However, the language was used where the statute gave authority to bring the suit generally. Certainly the language is appropriate here where the statute does not give the authority to bring the suit, as to Fischer and Porter Company, in the District of Delaware. This is an harassing action brought by plaintiff, as he admits, to force either a license agreement with Fischer and Porter Company, or to force Fischer and Porter Company to intervene in this suit. The action on the surface is against defendant with a purpose of seeking justice, but perhaps justice blended with some harassment to achieve his own ends as he admits in his deposition on file and by his argument, letter and correspondence with defendant above quoted.

This plaintiff comes into equity to seek relief. He says, in his argument,

"Plaintiff's counsel did state that the amount of money which plaintiff could recover on account of defendant's infringement of plaintiff's patent, was in and of itself not sufficient to justify the expense of the trial of this action. The economic justification for this suit is not primarily to seek money recovery from the defendant, but rather the honest desire to seek an adjudication of the patents and thereby engender greater respect for the same by others, and the resulting pecuniary gain that will flow to plaintiff if such respect is engendered." The Court inquires, How can the purpose be accomplished without an adjudication of the respective patent rights and claims? It is obvious that his purpose cannot be accomplished.

The equitable relief that plaintiff seeks is injunctive, and the law is that the court has no power to assess money damages unless the injunction is awarded. The record here shows that defendant no longer uses the machine and has in fact returned it to Fischer and Porter Company at Hatboro, Pennsylvania. Equity by injunctive relief only acts in the future to restrain the alleged violation. The defendant has filed its written statement in court in which it says it contemplates no future use of the machine. Under such circumstances of what avail would an injunction be? The answer is none.

28 Am.Jur., Injunctions, Sec. 7, p. 201 says:

> "Since equity interposes by injunction to prevent future rather than past acts, acts and practices will not, as a rule, furnish a basis for injunctive relief when they have been discontinued or abandoned before institution of the suit to restrain them, or even after suit is begun, particularly where there is nothing to indicate a probability that they will be resumed, or where the repetition of the act is improbable and the wrongdoer is able to respond in damages."

The same text, 28 Am.Jur., Injunctions, Sec. 5, p. 199, says:

"Injunction is primarily a preventative remedy. Its province is to afford relief against future acts which are against equity and good conscience, and to keep or preserve a thing is status quo, rather than to remedy what is past or to punish for wrongful acts already committed. Generally speaking, rights already lost and wrongs already perpetrated cannot be corrected by injunction."

At Section 35, p. 230, same volume and text, it says:

"Courts of equity exercise discretionary powers in the granting or withholding of their extraordinary remedies. Although this discretionary power is not restricted to any particular remedy, it particularly is applicable to injunction since that is the strong arm of equity and calls for great caution and deliberation on the part of the court * * *. There is ordinarily no absolute right to injunction. The relief is not given as a matter of course for any and every act done or threatened to the person or property of another; its granting rests in the sound discretion of the court to be exercised in accordance with well settled equitable principles and in the light of all the facts and circumstances in the case, of which the presiding judge has a right to require a full and candid disclosure, and if he is satisfied that this has not been done, he may refuse to exercise his extraordinary power."

See also Section 47, pp. 242, 243 of same text.

The rule is further aptly stated in 43 C.J.S. Injunctions § 29b, p. 460, wherein the text says:

"It has been said that equity acts in the present tense, and that relief is dependent on present and future conditions rather than solely on those existing when the suit is brought.

While an injunction will not be denied where the question has not merely become moot either because there still remains a justiciable issue, or because petitioner was not a party to the litigation wherein it is claimed the issue was adjudicated, nevertheless, although the bill may state good grounds for the granting of an injunction, where events occur after the filing of the bill, which render an injunction unnecessary or ineffectual, it will ordinarily be refused."

Again the further rule is announced in 43 C.J.S. Injunctions § 285, p. 1062:

"As in the case of suits brought on injunction bonds * * * so in jurisdictions where it is permissible for the court trying the injunction suit to assess the damages * * * it is a condition precedent to such assessment and allowance that there shall have been a final decision on the merits * * *."

In Root v. Railway Co., 105 U.S. 189, at page 215, 26 L.Ed. 975, the Supreme Court speaking, said:

"Our conclusion is that a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to a patentee his standing in court; that the most general ground for equitable interposition is, to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement * * * and as such cases cannot be defined more exactly, each must rest upon its own particular circumstances, as furnishing a clear and satisfactory ground of exception from the general rule."

The record in this case from the pleadings, the respective affidavits and the deposition show that plaintiff became aware of the fact that Fischer and Porter Company was manufacturing and selling

"data loggers" in late 1954 or early 1955 in connection with the installation of a Fischer and Porter "data logger" at the Bayway, New Jersey Refinery of Standard Oil Company. (Titus G. LeClair Deposition, p. 8). Some time before November 30, 1956, (Titus LeClair Deposition, p. 31, Defendant's Ex. 18), plaintiff had notice that a Fischer and Porter Company's "data logger" was to be installed at the Wood River, Illinois Refinery of defendant, and that it was to be installed six weeks from Jan. 21, 1957 (Titus G. LeClair Deposition, p. 35, Defendant's Ex. 20). Thus plaintiff had this knowledge before the alleged infringing "data logger" was installed on trial at defendant's Refinery, yet he failed to put defendant on notice of his patents by which he claimed prior invention. He was careful though to put eight other people on notice of his claimed prior invention. He notified Fischer and Porter Company on Feb. 28, 1955. (Titus G. LeClair Deposition, p. 9), Beckman Instruments, (Titus G. LeClair Deposition, p. 12) an outfit in New York, (Titus G. LeClair Deposition, p. 13), Standard Oil Company of New Jersey, Standard Oil Company, Minneapolis-Honeywell, Kybernetes, (Titus G. LeClair Deposition, p. 63) but never commenced any action against other alleged infringers. (Titus G. LeClair Deposition, p. 15). LeClair also stated that he had seen and inspected the interior of the "data logger"; that he knew the task involved in installing a "data logger"; that it would take a large number of man hours and it would take skilled men to do the installing, involving "time period of two months". (LeClair Deposition, pp. 62, 63.) The affidavits of defendant show that it will be necessary to a trial of the case to actually demonstrate this "data logger", and the expense for shipping and installing at Springfield, including the time for skilled man hours, will be $10,000.

The plaintiff, on his trip of inspection to the refinery, was furnished by defendant with report of the "data logger" in question at platformer 2. This report, Defendant's Ex. 23, shows that the selling price of this equipment was $32,000, but that because of field troubles and complications, the logger has cost Fischer and Porter Company about $75,000. Defendant encountered many difficulties from the beginning of its operation. The complete system has never been satisfactory at any one time.

The equipment was returned to Fischer and Porter Company because of its failure to serve its required purposes, and the contract of purchase was never consummated. Defendant's Ex. 22, under the signature of plaintiff, shows that plaintiff knew that the operation was only partially successful and had not been paid for, and that he was given by defendant photographs of the equipment and a copy of the paper, Defendant's Ex. 23, above referred to, which had been prepared for delivery to the Shell organization outlining the experience with this equipment. The failures pointed out above are an abstract of this exhibit. The plaintiff does not manufacture machines, has no place of manufacture, and has no machine that he could demonstrate in court. He relies exclusively on the words of his patents. It would not be necessary for him to move and reassemble a machine. He would not have to pay labor expense for assembly of a machine. It is clear that this court, upon the showing and equities demonstrated here, would not grant an injunction.

The Court, for the purpose of determining whether or not this case should be transferred to the District of Delaware, inquired of both plaintiff and defendant about their respective views as to the full factual situation. The views of defendant have been set out above. The Court inquired of plaintiff what, if anything, he claimed as damages if the action at law would proceed sounding in damages rather than for equitable relief. He replied,

"The measure of plaintiff's damages is as provided by statute, 'a reasonable royalty', and since the plaintiff has received royalties from 7% to 10% of the sales price of the

machine involved in contracts resulting from arms length negotiations (apparently referring to other royalties from other persons) the plaintiff has been damaged in an amount between $2,240 and $3,200."

He makes this reply, yet he told defendant, in a telephone conversation on March 28, 1958, after the defendant permitted him to enter its Refinery under the subterfuge of viewing the machine for possible installation of a similar machine at the Commonwealth Edison power plant in Chicago,

"As a result of his visit to the refinery he was instituting a suit against Shell Oil Company for the use of the Fischer and Porter equipment * * * that he had no quarrel with the Shell Oil Company but that his attorney felt that the filing of such suit against the Shell Oil Company was his best course of action in order to force some action on the part of Fischer and Porter".

█ The Court further points out that the contract of sale between Fischer and Porter Company and defendant was never consummated, but in fact was cancelled, terminated and abrogated because the machine was not capable of performing its functions as provided for under the terms of the purchase contract. Since there was no contract of sale and no consideration price by reason of the trial demonstration of the "data logger", there is no basis for determining a royalty under plaintiff's theory if the action were to proceed at law for money damages. Even if the plaintiff were to succeed in his alleged suit for infringement by user during the trial demonstration, the damages could only be nominal or those "de minimis non curat lex", even if his property right in his alleged patents were invaded, which may possibly have occurred. Place all the advantages the plaintiff could have on one side of the scale against the disadvantages to the defendant and consider one alone, the great expense of admittedly a sum of $10,000 as reasonably necessary to the trial here, the scale balances heavily downward beyond any question in favor of defendant to its great injustice. The plaintiff could only recover at the most nominal damages. Cornely v. Marckwald, 131 U.S. 159, 9 S.Ct. 744, 33 L.Ed. 117. Further, if the plaintiff were to succeed with his alleged cause of action for infringement as to this defendant as the parties to this suit now stand, absent Fischer and Porter Company, there could be no judgment in this Court or in the District of Delaware, determining basic patent rights between plaintiff and Fischer and Porter Company. The law in reference to this is so basic that it is unnecessary to cite authority in support thereof.

Reference is now had to Rule 12 of The Federal Rules of Civil Procedure which says:

12 "(b) How Presented. Every defense in law or fact, to a claim for relief in any pleading, whether a claim * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion * * * (6) failure to state a claim upon which relief can be granted * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

12 "(h) Waiver of Defenses. A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except (1) that the defense * * * to

state a claim upon which relief can be granted \* \* \* the court shall dismiss the action."

Rule 56 states:

56 "(b) For Defending Party. A party against whom a claim \* \* \* is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

56 "(c) Motion and Proceedings Thereon. \* \* \* The judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file together with the affidavits, if any, show that there is no *genuine* issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

These rules are taken into considera tion in light of defendant's motion to dismiss for lack of jurisdiction under Title 28 U.S.C.A. § 1400(b), whether or not the court should decline jurisdiction, and in the light of the law in reference to public importance of dispositive determination of patent infringement suits.

Under Rules 12(b) and 56(c) the Court may inquire of the parties to determine whether or not it lacks jurisdiction over the subject matter, 12(b) (1), or whether or not there is a failure to state a claim upon which relief can be granted. 12(b) (6). Under Rule 12 (h) if it appears that the defense, failure to state a claim upon which relief can be granted, is present in the case, "the court shall dismiss the action", and under Rule 56(b) and (c), "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact \* \* \*."

It appears to the Court that there is no genuine issue of fact between the parties to this suit, as it presently stands

here, or if transferred to the District of Delaware. The issue is infringement and plaintiff in this record admits that in so far as defendant is concerned this issue is only between plaintiff and Fischer and Porter Company. Plaintiff further admits that he has "no quarrel" with defendant.

This Court is of the opinion that when consideration is given to the admitted great expense of the trial of this case as the record now stands, the meaning of the rules 12(b) (6) "to dismiss for failure \* \* \* to state a claim upon which relief can be granted", and of 12(h) "that the defense of failure to state a claim upon which relief can be granted \* \* \*, the court shall dismiss the action", and Rule 56 (c) " \* \* \* that there is no genuine issue as to any material fact \* \* \* ", is that there must be alleged and the record must show a state of facts that are genuine and that a party who uses a machine on trial, and who admittedly is sued for the purpose of pressuring a third party over whom the court has no jurisdiction and where the expense of trial is so great in comparison to the nominal relief to which plaintiff might be entitled, should, in all justice, be protected, and the plaintiff should not be permitted to proceed in this action.

Further, an examination of the authorities show that under the admitted facts in this record, the defendant in this case is not an infringer, the machine having only been installed on a trial basis.

In 69 C.J.S. Patents § 316, p. 928, the following rule is set out:

"Act of infringement, within the meaning of the statute \* \* \* consists in the making or in the use or in the sale of the patented invention \* \* \* contracts to manufacture or negotiations for a sale are not sufficient",

and the same text at § 289 states:

"It is not infringement to propose to sell".

Cited in support of this text statement are the cases of Hauserman Co. v. Wright Metal, D.C., 9 F.Supp. 767; Van Kannell Revolving Door Co. v. Revolving Door & Fixture Co., D.C., 293 F. 261.

■ No case found or called to the attention of the court supports the proposition that a trial demonstration as shown by the facts here constitutes infringement. The facts show a proposal to sell the machine, the placement of the "accused 'data logger'", to determine its utility, its failure to perform, an actual expense to defendant in trying to make it work, and the subsequent cancellation of the order, with no present or future intention of having it reinstalled anywhere by defendant. This, for all purposes outlined by the facts above set out as a basis for this suit, does not constitute infringement.

■ There is a further reason for viewing this record in the light of what it actually shows in order to determine the conclusion hereinafter reached. It is this, the determination of validity, rather than infringement, in the light of the public importance to a dispositive determination of patent infringement suits that is the most important. In Hawley Products Co. v. United States Trunk Co., 1 Cir., 259 F.2d 69, at page 75, it is said:

"* * * of the two questions of validity and infringement, 'validity has the greater public importance,' (citing authorities) for it is of greater interest to the public that an invalid patent 'should not remain in the art as a scarecrow,' (citing authorities) than that a patent has been infringed by some particular defendant. (citing authorities)",

or as stated in Pope Mfg. Co. v. Gormully, 144 U.S. 224, 12 S.Ct. 632, 636, 36 L.Ed. 414, at page 418,

"It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly."

The court does not mean in any wise to imply that plaintiff may not have valid patents, but looks to all the surrounding circumstances of this case to show that the very nature of this suit cannot effectively dispose of this litigation in view of the law above announced, i. e., a judgment that Fischer and Porter Company, absent from this case, does not have valid patents. The litigation as to patent validity is not between plaintiff and defendant, but is between plaintiff and the absent party, Fischer and Porter Company. It certainly is not justice under the guise of this equity suit to put defendant to such great expense of a trial in a suit where there is such doubtful infringement as is fully disclosed by this record, or to put it to the expense of a scapegoat defendant to at least in part pay the great expense involved when the real defendant is Fischer and Porter Company.

The question in the mind of this court is whether or not to assume jurisdiction that would result in merely or possible nominal damages at such great expense to defendant, or to transfer the cause to the District of Delaware.

■ This Court has the power to determine its jurisdiction in a proper case. The defendant, in its motion, raises the question of jurisdiction. The Supreme Court, in the case of Land v. Dollar, 330 U.S. 731, 734 and 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209, in reversing the trial court on a question of jurisdiction, said,

"In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and the affidavits and other evidence produced on application for a preliminary injunction may not be considered (citing cases) but when a question of the district court's jurisdiction is raised either by a party or by the court on its own motion, Judicial Code § 37, 28 U.S.C., § 80, 28 U.S.C.A. § 80, Federal Rules Civil Procedure, Rule 12

(b), 28 U.S.C.A. following Section 723 c, the court may inquire by affidavits or otherwise, into the facts as they exist. Wetmore v. Rymer, 169 U.S. 115, 120, 121, 18 S.Ct. 293, 295, 42 L.Ed. 682; McNutt v. General Motors Corp., 298 U.S. 178, 184 et seq., 56 S.Ct. 780, 783, 80 L.Ed. 1135; K.V.O.S. Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183. As stated in Gibbs v. Buck, supra, 307 U.S. at pages 71, 72, 59 S.Ct. at page 729, 83 L.Ed. 1111, 'As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.' "

A corollary to this proposition is stated in Rogers v. Guaranty Trust Co., 288 U.S. 123, 130, 53 S.Ct. 295, 297, 77 L.Ed. 652, where the Court said,

"It has long been settled doctrine that a court state or federal sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile. (citing authorities). While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power. (Canada Malting Co. v. Paterson Co., 285 U.S. 413, 422 [52 S.Ct. 413, 76 L.Ed. 837] and authorities cited). It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. Langnes v. Green, 282 U.S. 531, 535, 541 [51 S.Ct. 243, 75 L.Ed. 520]. Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case. (citing authorities)."

This rule is applicable in all types of cases, as said by the court in Heine v. New York Life Ins. Co., 9 Cir., 50 F.2d 382, 387, where the court said,

"Civil cases * * * in admiralty and maritime jurisdiction have equal status, and the courts have uniformly, where the question has arisen, declined to entertain jurisdiction in admiralty suits by nonresidents when in the discretion of the court it would be inconvenient and inexpedient to do so. And no distinction has been made to civil cases."

See also Canada Malting Co. v. Paterson Co., 285 U.S. 413, 52 S.Ct. 413, 415, 76 L.Ed. 837, where the court said,

"Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of other courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interests of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents, or where for kindred reasons the litigation can more appropriately be conducted."

The doctrine of "forum non conveniens" does not require or imply that the cause must be transferred to the District of Delaware, or that this court take jurisdiction of this suit under the factual situation outlined. It only requires that where there is a suitable forum in existence to adjudicate basic patent rights that a court may remit the parties to a court of competent jurisdic-

tion and this purpose, if there is a sincere desire on the part of the plaintiff for an adjudication that his patent rights or that the Fischer and Porter Company patents infringe his patents, is accomplished by a dismissal of the suit without prejudice so that plaintiff may sue Fischer and Porter Company in the district of its residence where the court would have jurisdiction to decide the basic question with finality.

In Williams v. Green Bay & W. R. Co., 326 U.S. 549, 66 S.Ct. 284, 287, 90 L.Ed. 311, speaking of the doctrine, the court said:

"We mention this phase of the matter to put the rule of forum non conveniens in proper perspective. It was designed as an 'instrument of justice.' Maintenance of a suit away from the domicile of a defendant, whether it be a corporation or an individual, might be vexatious or oppressive. An adventitious circumstance might land a case in one court * * * it should be tried in another * * * The same may be true even where an injunction is sought * * * Each case turns on its own facts."

Under the factual situation here, plaintiff conceding that the real defendant is the absent Fischer and Porter Company, and that they have "no quarrel" with defendant, it is impelling to the mind of the court that jurisdiction should be declined.

This court grants to the plaintiff that it has the power to assume jurisdiction and render, if the facts so justify, a nominal judgment, if infringement should be found. However, while this Court has jurisdiction to adjudge the rights of the parties, in the light of this record it does not follow that it is bound to exert that power. Canada Malting Co. v. Paterson Co., 285 U.S. 413, 422, 52 S.Ct. 413, 76 L.Ed. 837 and authorities cited. It is free in the exercise of sound discretion to decline to pass upon the merits of the controversy, and to relegate the plaintiff to an appropriate forum. Langnes v. Green, 282 U.S. 531, 535, 541, 51 S.Ct. 243, 75 L.Ed. 520; Heine v. New York Life Ins. Co., 9 Cir., 50 F.2d 382; Rogers v. Guaranty Trust Co., 288 U.S. 123, 130, 53 S.Ct. 295, 77 L.Ed. 652. This view is further stated in Cyclopedia of Federal Procedure, Vol. 2, Sec. 2.452, p. 155, viz.:

"Likewise in some circumstances a court may exercise a sound discretion in determining whether or not jurisdiction shall be assumed. As has been seen, the court may, in a proper case, refuse to exercise jurisdiction by reason of the application of the rule of 'forum non conveniens' ".

Also a similar rule is announced in 21 C.J.S. Courts § 90, p. 140, as,

"On the other hand, jurisdiction may be refused in the absence of sufficient reasons for assuming it. A court which is not in a position to do complete justice in the case may and should decline jurisdiction."

In 14 Am.Jur., Courts, Sec. 173, p. 372 it is said,

"*Under certain circumstances the courts refuse to exercise jurisdiction in matters which are within such jurisdiction.* The courts will not exercise jurisdiction in the case of a suit which is frivolous or vexatious and will refuse to proceed where it is made apparent that there is an abuse of legal process. The courts will also refuse jurisdiction of suits which are fictitious or collusive. Another firmly established principle of jurisdiction is that the courts will not undertake to decide questions which are unrelated to an actual controversy or which, by a change in the condition of affairs during the pendency of the action, have become purely abstract.

"On the other hand, the court will not decline jurisdiction of a suit because of the motive or ulterior purpose of the plaintiff in bringing it, *although it may be taken into con-*

*sideration where he is seeking equitable relief.*

"*It is a rule of the superior courts of law that they will refuse to take jurisdiction of a suit in which the amount involved is not a substantial one. But the maxim, "de minimis non curat lex" is never applied to the positive and wrongful invasion* of one's property. The rule in equity is somewhat different, since the refusal to exercise jurisdiction is not put on the ground that actions for small sums are more properly brought in an inferior court, *but on the ground that to take jurisdiction of such controversies is beneath the dignity of the court.*"

Another statement of the Rule is as follows, as stated in 54 Am.Jur., United States Courts, Sec. 13, pp. 673, 674:

" \* \* \* However, the duty to accept jurisdiction is not an absolute one. Although it is sometimes said that the court which has jurisdiction in a particular case must exercise it, it nevertheless does not follow from the fact that the Federal court has jurisdiction to adjudicate rights of the parties to a suit brought therein, that it is bound to exercise jurisdiction. A federal court may, in its discretion, properly withhold the exercise of the jurisdiction conferred upon it where there is no want of another suitable forum, or where the exercise of the jurisdiction invoked would be prejudicial to the public interest. Grounds for justifying such a qualification have been found in considerations of convenience, efficiency and justice applicable to particular classes of cases."

Again the rule is stated in Rogers v. Guaranty Trust Co., 288 U.S. 123, 130, 53 S.Ct. 295, 298, 77 L.Ed. 652 as follows:

"While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power.

Canada Malting Co. v. Paterson Co., 285 U.S. 413, 422 [52 S.Ct. 413, 76 L.Ed. 837], and authorities cited. It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. Langnes v. Green, 282 U.S. 531, 535, 541 [51 S. Ct. 243, 75 L.Ed. 520]; Heine v. New York Life Ins. Co. [9 Cir.], 50 F.2d 382."

For the reasons herein stated, this court declines jurisdiction of this case so that plaintiff can bring his case in a court that has the power to adjudicate the basic question of patent rights and thereby put an end to litigation. In reaching this conclusion it is unnecessary to pass on the motion to transfer the case to the District of Delaware.

It is therefore ordered that this cause be dismissed at the cost of the plaintiff, without prejudice, and the facts and law hereinabove recited are adopted by the court as conclusions of law and fact.