(No. 31650.—

GLADYS LUSTFIELD, Appellant, *vs.* CHICAGO TRANSIT AUTHORITY, Appellee.—(TOWN OF CICERO *et al.*, Intervening Petitioners and Appellants.)

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

JOSEPH LUSTFIELD, of Chicago, for appellant Gladys Lustfield; NICHOLAS BERKOS, of Cicero, (JOHN C. GEKAS, of counsel,) for appellant Town of Cicero; and JOSEPH E. SERHANT, City Attorney, of Berwyn, (MILTON A. SVEC, of counsel,) for appellant City of Berwyn.

WERNER W. SCHROEDER, THOMAS C. STRACHAN, JR., WILLIAM S. ALLEN, and JAMES E. HASTINGS, all of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a direct appeal from the superior court of Cook County by the city of Berwyn and town of Cicero, hereinafter referred to as appellants, from a decision of the superior court of Cook County dismissing their intervening petitions, together with dismissal of the complaint herein for want of equity. The trial court denied all relief as' prayed for in the original complaint and the intervening petitions when the cause was tried before it without a jury.

In essence, the pleadings, requesting a mandatory injunction, alleged that, by reason of certain franchise rights granted to the Metropolitan West Side Elevated Railway Company by the intervening petitioners, that carrier acquired and built a right of way in and through the appellant municipalities; that under the terms and conditions

of the franchise, the carrier was to operate a transportational system of electrically powered cars operating upon rails along the right of way so acquired, which operation was an extension of that carrier's then existing Douglas Park branch; that further, under other provisions of this same agreement, the carrier was obligated to maintain its service seven days per week upon such schedule as would reasonably accommodate the inhabitants of the appellant municipalities and the service was to continue from the loop district in the city of Chicago to the west side terminal of the carrier at Oak Park Avenue in the city of Berwyn. The pleadings then allege that the Chicago Transity Authority, hereinafter referred to as Authority, acquired the properties of the Metropolitan West Side Elevated Railway Company and that on July 10, 1949, defendant suspended all week-end service along the Douglas Park line, beginning at Cicero Avenue in the town of Cicero on the east and extending to the terminal at Oak Park Avenue in the city of Berwyn on the west; that, in lieu of this electric powered service along its right of way, the Authority substituted shuttle bus service.

The petitions then alleged that the suspension of weekend electrical service and the substitution of shuttle busses therefor was in violation of a contractual obligation as contained in the franchise grant and, in addition, endangered the public health and safety of the citizens of the appellant municipalities.

Briefly, the appellants argue that since the statute creating the defendant was never adopted by the appellants as provided in section 4 of the Metropolitan Transit Authority Act, the Authority is operating as a public carrier while within the territories of the appellant municipalities and not as a municipal corporation. They further contend that such service was subject to the control of the respective municipalities affected. They further argue that the defendant is subject, in this cause at least, to the control

of the municipalities and that they are entitled to appeal to a court of equity to force the Authority to abide by its franchise contract. The appellant town of Cicero goes even further and insists that the Authority has no right to operate its facilities in the town of Cicero and should be ordered to remove its property from the town of Cicero after such reasonable time as it would take for the town of Cicero to procure other transportation facilities.

The court below determined that the Authority should not be compelled by mandatory injunction to render electrical train service under the ordinances between the municipalities and the Authority and that it should not be prevented by injunction from operating busses for interurban transportation services on public highways without obtaining a permit to do so from each of the municipalities.

The only matter presented to this court is one of law. The sole question for decision, as indicated by the record in this case, is whether or not the Chicago Transit Authority, a creature of statute, can be said to be bound by the ordinances of the city of Berwyn and town of Cicero, and whether or not it is subject to municipal consent and control for operations within the limits of those municipalities.

The two municipalities are generally in agreement on their argument against the ruling of the lower court. They say first that the town of Cicero has the general police power over its streets and alleys and has the exclusive right and power to control and regulate the alleyways, streets, and other public places and abate any obstruction or nuisance therein, citing *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506.

They say that the municipalities have the right to insist upon the performance of the terms of the license, franchise, or ordinance because the franchise in question is a contract between the original grantee and cannot be impaired at the will and pleasure of the successor to the

grantee. They again cite *City of Geneseo* v. *Northern Illinois Utilities Co.* for this proposition.

Lastly, the appellant municipalities contend that the transfer of the franchise, no matter how consummated, carries with it any burden which is inherent in the grant of the franchise. For this they cite *People ex rel. Cantrell* v. *St. Louis Alton and Terre Haute Railroad Co.* 176 Ill. 512, and cases from other jurisdictions.

The appellee says that the enactment of the Public Utilities Act repealed any authority which cities and villages previously had to adopt ordinances regulating services or rates for public utilities and abrogated such provisions of ordinances which had been adopted prior to the date of passage of the act. Counsel cite here *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506; *Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 Ill. 360 and section 30 of the Metropolitan Transit Authority Act. Ill. Rev. Stat., 1949, chap. 111⅔, par. 330.

The Authority further argues that it exercises its powers by virtue of legislative authority and not as an assignee of any permission or authority under the fifty-year franchise ordinances, which the villages contend are controlling here. Counsel cite *Fallon* v. *Commerce Com.* 402 Ill. 516, and *People* v. *Chicago Transit Authority,* 392 Ill. 77.

Appellee further states, citing the above cases and references to the act, that in the acquisition of the properties from the elevated railways pursuant to the plan of reorganization, the Authority was expressly exempted from any obligation of its predecessors to perform the service conditions of these or any other ordinances.

Appellee further contends that the adoption of the act in accordance with section 4 by the electors of two municipalities having an aggregate population exceeding 100,000 enables the Authority to exercise its power throughout the

entire metropolitan area, and the adoption of the act by these other towns, cities or villages was not necessary. Counsel cite the Metropolitan Transit Authority Act, sections 4, 30, 31. (Ill. Rev. Stat. 1949, chap. 111⅔, pars. 304, 330, 331.) They also cite *People* v. *Chicago Transit Authority*, 392 Ill. 77.

Lastly, the appellee says that the cities do not have the power to prohibit busses from using the public highways, and states that the bus service is, in fact, interurban rather than local and is expressly authorized by the Metropolitan Transit Authority Act. Counsel cite *People* v. *Chicago Transit Authority*, 392 Ill. 77, and section 31 of the act aforesaid.

The contentions of appellants and appellee present to us three matters, the decisions of which are determinative of the rights of the parties herein. These questions are (1) whether or not the Transit Authority is bound by the terms of the ordinances by reason of the fact that it acquired the properties of the original grantee under the ordinance; (2) whether the appellant municipalities can prevent the operation as carried on by the Authority by reason of their right and power to control and regulate their alleys, streets and other public places independent of the terms of the ordinance and under our law; and (3) whether or not the Authority is prevented from operating along the streets of the appellant municipalities until such time as the appellant municipalities vote to accept the Transit Authority Act under the terms of the statute.

In *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 176 Ill. 512, the court was requested to issue a writ of *mandamus* to compel the railroad company to run a passenger train. The defendant in that case had leased a railroad from another company which had a charter setting forth the duty of the lessee operator to run the passenger train in question. The court, in requiring a

*mandamus* to issue, said that in case of a lease by one railroad company to another, the lessee assumes the rights, franchises and obligations contained in the charter of the lessor, and must conform to the requirements of said charter. The main body of the opinion, however, was concerned with the rights of the public and the public welfare and it was admitted in the case that the question of the railroad's finances was something to be considered in deciding the cause.

This case was decided in 1898 and referred to special statutory provisions involving railroads which were a part of the law prior to the time the Public Utilities Act came into effect. To like effect is *State Public Utilities Com. ex rel. Quincy Railway Co.* v. *City of Quincy*, 290 Ill. 360.

Cases of this type were reviewed at great length in *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506. This case is cited by all parties to this proceeding, but its language indicates without question, that the passage of the Public Utilities Act abrogated certain rights of municipalities. Among those rights which were abrogated would seem to be the power to regulate or control service by ordinance. In other words, were the Transit Authority a public utility operated by private individuals, the municipalities here could not argue that the ordinances were controlling, inasmuch as the law is clear that those ordinances had been abrogated as to those sections affecting service by the passage of the Public Utilities Act in 1913.

Even were we wrong in our decision in this regard, the Transit Authority Act itself clearly places the Authority outside of the effect of the ordinances. Section 3 of the act provides for the creation of a political subdivision, body politic and municipal corporation under the name of Chicago Transit Authority. Section 6 gives to the Authority the power to acquire, construct, own, operate and maintain a transportation system in the metropolitan area of Cook County and all powers necessary or convenient to

accomplish the purpose of the act, including, without limiting the generality of the foregoing, the specific powers enumerated in the act to accomplish these purposes. Section 30 provides that the board of the Transit Authority shall make all the rules and regulations governing the operation of the transportation system and shall determine all routings and change of same whenever it is deemed advisable, subject to the provisions of any ordinance granting rights to the Authority. In *People* v. *Chicago Transit Authority,* 392 Ill. 77, and *Fallon* v. *Commerce Com.* 402 Ill. 516, we said that the Transit Authority Act was an independent, separate and complete act and that the validity of its provisions had been settled beyond doubt. It would seem that the ordinances are directly opposed to the authority granted by these sections of the act. Under these circumstances, there is no question but what the will of the legislature as expressed in the act is controlling. The question of constitutionality of the act has already been settled.

Appellants also argue that the purchase of the property by the Transit Authority carried with it the obligations under the franchise ordinances in question. The reasoning of the appellant municipalities along this line seems to have been settled to a great degree by the case of *Fallon* v. *Commerce Com.* 402 Ill. 516. There the question was presented as to whether the Authority was subject to certain duties and obligations which allegedly had bound the Chicago Rapid Transit Company. In that case the organization plan and sale expressly negatived the assumption of such obligations. There the obligations sought to be enforced were inconsistent with the terms of the Metropolitan Transit Authority Act. It was there contended that the Authority was bound to the same extent as the Rapid Transit Company as to the sharing of use of tracks and other facilities as required by an order of the Illinois Commerce Commission. The facts are analogous to this cause. The lan-

guage of that case is very clear that the Authority acquired the properties free and clear of service obligations which appellants here seek to impose upon it. It was settled in that case that the plan and the conveyances pursuant to that plan carried out the intention to convey these properties free and clear of such obligations.

The appellant municipalities, however, contend that the case of *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506, definitely and for all times settled the rights of the cities and villages to extend complete control over the occupancy of their streets, and argue that by reason of this law, the Transit Authority may not operate over their streets without obtaining authority or complying with the franchise ordinances which they held with its predecessors.

A careful reading of the *City of Genesco case* discloses that the contention of the appellant municipalities is not well taken. The case does not contain language as broad as that which the appellants read into it. It was very carefully pointed out by this court in that case that a judicial opinion, like a judgment, must be read as applicable only to the facts involved, and is an authority only for what is actually decided. (*People ex rel. Schuler* v. *Chapman,* 370 Ill. 430; *White* v. *Seitz,* 342 Ill. 266.) The *City of Geneseo case* involved the right of the city of Geneseo to force a public utility to move its poles from the city streets at the termination of the franchise ordinance when the city itself desired to put into operation a municipal plant. It was specifically stated in the *City of Geneseo case,* referring to the case of *Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 Ill. 360, that the basis of the decision in the *North Shore case* was to give the right to regulate railroads to the Commerce Commission and to take it away from the cities and villages. Analogous to this is the power given to the Authority under the Transit Authority Act. It certainly cannot be said that if in one act the power to regulate was taken from

the cities and villages, it was not also taken by the later act setting up a transit authority. The *City of Geneseo case,* however, also very carefully draws a distinction between the use of streets by motor vehicles and the maintenance of structures on such streets without municipal consent. It was held in that case that although cities and villages had been vested by the legislature with power to prohibit the occupation of the streets to the exclusion of the general public, that, as illustrated by the case of *Chicago Motor Coach Co.* v. *City of Chicago,* 337 Ill. 200, cities do not have the power under any grant of the legislature to prohibit the operation of automotive vehicles on city streets, but did have the power to regulate the use of the streets by such vehicles. It further was stated, in discussing the *Chicago Motor Coach Company case,* that that holding decided that regulation was inconsistent with prohibition or exclusion.

The language of the Transit Authority Act is very clear. Section 3, section 6 and section 30 of the act, discussed above, indicate the complete authority vested in the Chicago Transit Authority by the terms of the Transit Authority Act. Section 31 of the act provides that the board shall have power to pass all ordinances and make all rules and regulations proper or necessary to regulate the use, operation and maintenance of the property and the facilities and to carry into effect the powers granted to the Authority. We cannot imagine stronger language to convey to the Transit Authority full power to conduct the business of managing, regulating and operating a transportation system in the municipal area of Chicago. Whether or not the legislature was wise in its decision to convey this authority to the Transit Authority is not for us to say. As we stated in the case of *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506: "It is not for us to judge the propriety of legislation, but to construe the laws when enacted."

The last question now before us is whether or not the Transit Authority is properly operating in the metropolitan area of Cook County by reason of the vote cast for its adoption in the village of Elmwood Park and the city of Chicago.

The appellants argue that the Authority is not entitled to operate its facilities except in those municipalities which have adopted the act and in no other communities. They state that since only the city of Chicago and the village of Elmwood Park have adopted the act according to its terms, it cannot be considered that the act is binding upon the appellants.

Section ·3 of the act provides that certain territory which encompasses almost entirely Cook County and includes the town of Cicero and the city of Berwyn comprises, "a political subdivision, body politic and municipal corporation under the name of Chicago Transit Authority." Section 4 of the same act provides that the "authority shall not exercise any of the powers granted by this Act until it is adopted, in the manner provided in section 44, by the electors of one or more cities, villages and incorporated towns within the metropolitan area having a population in the aggregate of at least 100,000 according to the Federal census of 1940." It is agreed that the act was adopted by the voters of the city of Chicago and the village of Elmwood Park on June 4, 1945. Whether or not the Transit Authority is in a proper exercise of its powers by reason of such election has already been considered by this court. In *People* v. *Chicago Transit Authority,* 392 Ill. 77, wherein we held the act to be valid and in effect, we said, "The Transit Authority Act requires that, before the Authority can assume any of the power granted it, the adoption of the act be submitted to the vote of the people. Under the act and the city ordinance so providing, the question of the adoption of the act was submitted to a vote of the

people on June 4, 1945, the date of the judicial election, and the act was adopted." We further said, "The Authority was in existence from the time the act was approved, on April 12, 1945, since it carried an emergency clause. The adoption of the act by vote was made a prerequisite to the exercise of the powers conferred."

The language of section 4 having been fully satisfied, and the foregoing case of *People* v. *Chicago Transit Authority* having held the Transit Authority to be in full operation and the act in full force and effect, it would seem that the contentions of the appellants are without substance. Two communities having an aggregate of at least 100,000 have voted that the act shall be in effect. As pointed out by appellee, the limitations sought by the appellants here would greatly weaken the intent and purpose of the act. It is our understanding that the act was designed to provide a transportation system for the largest metropolitan area in the State. To hold that individual communities could prevent the Authority from operating within its statutory borders would greatly weaken this intent and make it impossible for the Transit Authority to accomplish the purpose for which it was designed.

It is, therefore, our decision that the ordinances of the city of Berwyn and town of Cicero are not binding upon the Transit Authority, nor do the cities have the power to prevent the Transit Authority from using the streets of those villages in the course of its operations in providing a transportation system for the metropolitan area covering Cook County. In view of the position which we have taken on the pertinent questions involved herein, it is not necessary to consider or discuss the minor or subsidiary points raised by the parties hereto. It is sufficient to say that the act setting up the Transit Authority grants the Authority full power to undertake the change in service which it proposed here. Nor do we undertake to consider the evi-

dence in this cause. The record discloses that the parties were of the opinion that the only matters involved were questions of law to be presented to this court upon appeal. For that reason we have not considered the reasonableness of the change of service by the Transit Authority nor have we considered the rights of the court to protect the general public from unreasonable orders and regulations of the Authority. For the reasons set forth herein, the decree of the lower court is hereby affirmed.

*Decree affirmed.*