FRANCIS B. STINE *et al.*, Plaintiffs-Appellees, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants—(THE CITY OF EVANSTON *et al.*, Intervenors-Appellees.)

(No. 58911; 

First District (1st Division)—July 3, 1973.

*Rehearing denied July 27, 1973.*

220

John Devine and Norman J. Barry, both of Chicago, (Rothschild, Barry, & Myers, of counsel,) for appellants.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The Chicago Transit Authority, a municipal corporation, and the individual members of its governing body, the Chicago Transit Board, (defendants) appeal from an order granting a preliminary injunction against them which will shortly be described. This order was entered on motion of the original plaintiffs, Francis B. Stine and Nathaniel L. Nathanson and also of four intervenors: city of Evanston, village of Wilmette, Carl Leonard and other persons acting with Businessmen for the Public Interest and also Ravenswood Manor Improvement Association acting with two individuals. Only the city of Evanston has seen fit to appear and to assist this court with a brief. These plaintiffs and all intervenors will be referred to as "plaintiffs". A statement of the factual background is required.

On April 8, 1971, defendants adopted an ordinance providing for abandonment of a stop on the public transit route through Evanston to Chicago, known as the Isabella station, and removal of the station buildings and platforms. On April 30, 1971, the two individual plaintiffs first above named filed a complaint to restrain enforcement of this ordinance.

Thereafter the city of Evanston and the village of Wilmette sought and obtained permission to intervene in the proceedings. On January 15, 1973, defendants adopted additional ordinances providing for abandonment of four more stations in Evanston and for other curtailment of service there and also in certain areas of Chicago. Amended pleadings were filed by Evanston seeking to enjoin this additional curtailment. The two additional groups of intervenors above described then obtained leave to become parties hereto.

On February 16, 1973, defendants adopted another ordinance rescinding all of the previous ordinances as above described with the exception only of the one providing for abandonment of the Isabella station. Upon written motions by plaintiffs and intervenors the court heard a considerable amount of testimony and then, on February 16, 1973, entered the preliminary injunction appealed from.

This injunctional order found that the defendants "* * * proposed to curtail and abandon certain transportation service presently supplied by it * * *" and that this action is "* * * beyond the power of the Chicago Transit Authority, and without due process of law; that members of the public represented by the plaintiffs and intervenors herein will be immediately and irreparably harmed thereby; that plaintiffs and intervenors have demonstrated a reasonable probability of ultimate success on the merits in this cause; and that a temporary injunction, pending a full hearing on the merits, should issue in order to preserve the status quo pending such hearing * * *." Accordingly the court enjoined defendants until further order of the court "* * * from instituting and implementing any curtailment or abandonment in transportation service which the defendant Chicago Transit Authority, as of 2 P.M. on the date hereof, regularly provides, whether on a daily or periodic basis."

In this court, defendants contend that the statute creating the Chicago Transit Authority specifically grants them power to discontinue, terminate or otherwise curtail their service. The brief filed for the city of Evanston contends that the preliminary injunction was not an abuse of the discretion of the trial judge and therefore it should be affirmed; and, that defendants do not have authority to terminate and discontinue service; or, if they do, that the action here taken was unreasonable and arbitrary.

The Chicago Transit Authority was created in 1945 by the Metropolitan Transit Authority Act. (See Ill. Rev. Stat. 1971, ch. 111⅔, pars. 301 to 344 inclusive.) The status of the Authority as a municipal corporation vested with governmental powers and the constitutionality of the statute which created it are not open to question. (*People v. Chicago Transit Authority*, 392 Ill. 77, 64 N.E.2d 4.) Consequently our primary source in

determination of the power of the Authority is an examination of the governing statute. Paragraph 304 of the statute provides that the powers of the Authority are not to be exercised until adoption of the Act by the electors of one or more cities within the subject area. It is agreed that this condition precedent has been fulfilled. Paragraph 306 vests in the Authority: "* * * power to acquire, construct, own, operate and maintain for public service a transportation system in the metropolitan area of Cook County and outside thereof to the extent provided and all the powers necessary or convenient to accomplish the purposes of this Act * * *." Paragraph 308 grants the Authority "* * * power to acquire by purchase, condemnation, lease, gift or otherwise any property and rights useful for its purposes and to sell, lease, transfer or convey any property or rights when no longer useful or exchange the same for other property or rights which are useful for its purposes."

Paragraph 330 provides that the governing Board of the Authority "* * * shall make all rules and regulations governing the operation of the transportation system, shall determine all routings and change the same whenever it is deemed advisable by the Board, subject to the provisions of any ordinance granting rights to the Authority." Paragraph 332 provides a method of sale by the Authority of property valued at more than $2500, after advertising for bids.

■■■ In arriving at the meaning of this statute, we have given due weight to the principle that municipal corporations have only those powers which are expressly vested in them by the legislature as their creator and those necessarily implied from or incident to these expressly granted powers. (*Appeal Bd. v. U.S. Steel Corp.*, 48 Ill.2d 575, 577, 272 N.E.2d 46.) However, upon complete analysis, we conclude, and accordingly hold, that this statute empowers the Transit Authority to curtail or abandon its transportation services. We base this conclusion upon the language giving the Authority all "powers necessary or convenient" to accomplish the purposes of the Act itself; upon the power vested in the Authority to sell, lease, transfer or convey its property or rights when no longer useful; and also upon the stated power of the Board to determine and change all routings whenever it is deemed advisable. The sum total of this language used in the statute negates any other conclusion.

In addition, as a matter of practical logic, it would be most cumbersome and virtually impossible in actual operation to create a public transportation system which was deprived of the power to curtail or abandon its operations in accordance with varying public necessity and convenience. Furthermore, the granted authority to "change" "routings" necessarily includes power to terminate or discontinue any part or the whole of any particular route.

We find this conclusion amply supported in *Lustfield v. Chicago Transit Authority*, 408 Ill. 404, 97 N.E.2d 347. The issue there was whether the Authority was obligated to maintain its service, seven days per week, between Berwyn, Cicero and Chicago; or, whether it had the power to suspend weekend service on the routes in question. Incidentally involved in the case was the right of the Authority to substitute shuttle buses in lieu of electrical service. Provisions for weekend and electrical service were contained in the original ordinances applicable to the predecessor of the Authority. The Supreme Court pointed out that the pertinent statute vested "complete authority" in the Chicago Transit Authority. Commenting upon that portion of the statute which vested the power to adopt all "proper or necessary rules and regulations" the court held (408 Ill. at 413):

"We cannot imagine stronger language to convey to the Transit Authority full power to conduct the business of managing, regulating and operating a transportation system in the municipal area of Chicago."

We note that this language is also quoted in *Chicago Motor Coach Co. v. Budd*, 346 Ill.App. 385, 391, 105 N.E.2d 140. In *Lustfield*, the court went on to point out that the statute "* * * grants the Authority full power to undertake the change in service which it proposed here." 408 Ill. at 415.

However, counsel for Evanston contend that the decisive issue here is simply whether or not the preliminary injunction, pending a full hearing of the case, was an abuse of the discretion of the trial court. The principle is undoubtedly valid as a general rule that granting of a preliminary injunction is within the sound discretion of the trial court and unless such discretion is abused a reviewing court will not set it aside. (*Lonergan v. Crucible Steel Co.*, 37 Ill.2d 599, 612, 229 N.E.2d 536.) However, the case at bar turns not upon the exercise of discretion in factual matters but solely upon a question of law. In our opinion the sweeping provisions of the injunction order appealed from, which would completely prevent defendants from instituting any "curtailment or abandonment" in the operation of the entire system of the metropolitan area, were contrary to the clear intent of the pertinent statute as demonstrated above.

Counsel for Evanston further urge that the one remaining unrescinded ordinance here involved, namely that which provides for eliminating the transit stop at Isabella Street in Evanston, was adopted without public hearing so that the rights of plaintiffs have been violated and they have been deprived of due process of law. A review of the pertinent statute demonstrates, however, that no provision was made by

the legislature for public hearings before the adoption of ordinances by the Authority. This seems most wise and practical. Such requirement would enmesh the Board in a series of hearings the determination of which might well infringe upon and prevent the efficient transaction of their business. In this regard, there is a clear distinction between the powers and functions of the Transit Board and the Illinois Commerce Commission. In the latter situation, there is elaborate machinery for hearings and investigations. (See Ill. Rev. Stat. 1971, ch. 111⅔, par. 64.) We hold that there was no requirement for the holding of public hearings by the Transit Authority prior to curtailment or abandonment of service.

■■■ This does not mean, however, that persons who may consider themselves aggrieved by ordinances of the Board are without remedy or recourse. On the contrary, the courts have power to protect all persons against oppressive, arbitrary or unreasonable ordinances; precisely as in the case of any other municipal corporation. In this type of situation, enactments of the municipal corporation are clothed with presumptive validity and courts will enjoin the operation thereof only when this presumption is overcome by clear and convincing evidence. (*Village of Glencoe v. Jackson*, 102 Ill.App.2d 65, 74, 243 N.E.2d 865.) This same principle has been repeatedly announced in virtually every zoning case. *Chicago Title & Trust Co. v. Chicago*, 130 Ill.App.2d 45, 50, 264 N.E.2d 730. This record shows that the trial judge heard evidence upon this issue but the order appealed from shows upon its face that the trial court struck from the previously prepared draft order the words "arbitrary and unreasonable" leaving only a finding that the proposed curtailment was beyond the legal power of the Authority, and this was the sole and only basis for the order appealed from. Actually, the record shows that in colloquy between the able trial court and counsel the court expressly stated, and repeated, his considered opinion that the Board did not act in an arbitrary or unreasonable manner. The argument made by counsel for Evanston that the evidence showed that the Board acted unreasonably and arbitrarily thus fails because of its specific rejection by the trial court.

It follows that the injunctional order appealed from should be and is reversed.

Order reversed.

BURKE, P. J., and HALLETT, J., concur.