BOARD OF EDUCATION OF PEORIA SCHOOL DISTRICT No. 150, Plaintiff-Appellee, *v.* THE PEORIA EDUCATION ASSOCIATION *et al.,* Defendants-Appellants.

(No. 74-281; ▮▮▮▮▮▮▮▮▮▮▮▮)

Third District—June 17, 1975.

Drach, Terrell & Deffenbaugh, of Springfield (R. W. Deffenbaugh, of counsel), for appellants.

Kavanagh, Scully, Sudow, White & Frederick, of Peoria (Gary S. Clem, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Peoria Education Association, its officers and members (defendants), appeal from a permanent injunction order of the Circuit Court of Peoria County prohibiting a teachers' strike against the Peoria Board of Education (plaintiff).

In August of 1973 after the Board and the teachers' bargaining representatives had failed to reach an agreement for a 1973-74 contract, defendants voted to strike, and 330 teachers failed to report for work on August 27 and 28. The Board initiated this action on August 28 and without a hearing obtained a preliminary injunction which prohibited defendants from engaging in a strike or picketing at the schools. On September 10, 1973, by stipulation of the parties, a hearing for a permanent injunction was continued to June 3, 1974, and in October of 1973 the parties reached agreement on a contract for 1973-74. On June 20, 1974, following a hearing on the merits, a permanent injunction was granted ordering defendants to refrain from "participating in, advising, urging, directing, causing, inducing, encouraging any strike or other concerted withholding of services, or interference with the performance of any service by any employee of plaintiff."

The pertinent evidence adduced at the hearing showed that the plaintiff and teachers' representatives were at that time (June, 1974) engaged in negotiations for a contract for 1974-75; that in March the teachers had proposed contract changes to increase the scope of the agreement to provide for binding arbitration and limitations on class size; that plaintiff had proposed a salary increment of approximately one-third the amount proposed by the teachers; that the plaintiff's refusal to agree to similar demands by teachers the previous year was the cause of the strike; that the teachers had decided to postpone their demands for enlarging the scope of the agreement until the 1975-76 negotiations; that similar teacher proposals had been made in 1971 and 1972 with no strikes resulting; and that defendants had no discussions or votes concerning a strike after September of 1973.

Defendants contend that the order for a permanent injunction on June 20, 1974, was improper and unwarranted because the dispute which prompted the injunction had been settled when the Board and teachers agreed to a contract for 1973-74 which included a no-strike clause and which disposed of other differences existing prior to the strike. Plaintiff responds that as of June 20, 1974, the same issues were in dispute between the parties as those that caused the 1973 strike and that, unless the injunction were made permanent, another strike could be anticipated.

Plaintiff cites the many cases where Illinois courts have approved temporary injunctions to prohibit strikes by public employees, including

teachers, but we note that all of these cases involved a strike already called or in progress. *City of Pana v. Crowe*, 57 Ill.2d 547, 316 N.E.2d 513 (1974); *Board of Education v. Kankakee Federation of Teachers Local No.* 886, 46 Ill.2d 439, 264 N.E.2d 18 (1970), *cert. denied*, 403 U.S. 904, 29 L.Ed.2d 679, 91 S.Ct. 2203, (1971); *Board of Education v. Redding*, 32 Ill.2d 567, 207 N.E.2d 427 (1965); *Allen v. Maurer*, 6 Ill.App.3d 633, 286 N.E.2d 135 (4th Dist. 1972); *Board of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600*, 126 Ill. App.2d 418, 262 N.E.2d 125 (1st Dist. 1970), *cert. denied*, 402 U.S. 998, 29 L.Ed.2d 165, 91 S.Ct. 2168 (1971); *City of Rockford v. Local No. 413, International Association of Firefighters*, 98 Ill.App.2d 36, 240 N.E.2d 705 (2nd Dist. 1968); see Annot., 37 A.L.R.3d 1147, 1150 (1971).

■■ As these cases indicate, issuance of a temporary injunction is within the sound discretion of the trial court upon a prima facie showing of necessity, and a reviewing court will not set aside such an injunction unless there was a manifest abuse of discretion or an error of law. (*Stine v. Chicago Transit Authority*, 13 Ill.App.3d 219, 300 N.E.2d 548 (1st Dist. 1973).) However, where, as here, a permanent injunction is challenged, a reviewing court must consider that the party seeking the injunction has the burden of proving it necessary. (*Guaranty Trust Co. v. Henwood*, 86 F.2d 347, 108 A.L.R. 1020 (8th Cir. 1936).) It is, therefore, our duty to ascertain if the finding of the trial court that such necessity exists has a reasonable basis in the evidence. *Simmons v. Retail Clerks International Association*, 5 Ill.App.2d 429, 125 N.E.2d 700 (4th Dist. 1955).

■■ Here the parties agree that a strike by public school teachers is unlawful and that the temporary injunction ordered on August 28, 1973, was proper. The defendants complied with the order and returned to work the following day. It is also agreed that the dispute which gave rise to the strike was settled in October of 1973, and that, in June of 1974, some of the same issues were again subject to negotiations by representatives of plaintiff and defendants. The record discloses that little progress had been made towards reconciliation of those issues and we perceive that the question of a permanent injunction was a disturbing element in the negotiations.

The trial court cited *Piano & Organ Workers' International Union of America v. Piano & Organ Supply Co.*, 124 Ill.App. 353 (1st Dist. 1906), where the appellate court approved a permanent injunction to restrain picketing issued after the strike had been settled. The trial court here, relying on the *Piano* case, held that issuance of a permanent injunction depended upon the facts as they existed at the time the complaint was filed, and if the facts were true at that time, there was need for an injunction. The trial court also stated that here, as in *Piano*, unless a permanent

injunction could be issued, temporary compliance with the terms of an interlocutory injunction, with the reserved purpose of renewing unlawful action after the final hearing, would paralyze all power of the court to grant relief. The court, again in reliance on *Piano*, held that there can be no practical harm in continuing an injunction which bars unlawful actions against persons who are not now engaged in such unlawful actions and do not intend to be so in the future. The record of proceedings in the case at bar shows that the trial judge discussed the *Piano & Organ Workers* opinion at length and quoted from it with approval, but gave no consideration to more modern views of injunctive relief in labor disputes.

More recently injunctions against picketing frequently have been held to infringe upon the free speech guarantees of the first and fourteenth amendments of United States Constitution (*e.g. Thornhill v. Alabama*, 310 U.S. 88, 84 L.Ed. 1093, 60 S.Ct. 736 (1940)), and the issuance of labor injunctions has been restricted by Federal and State statutes (see Annot., 132 A.L.R. 1218 (1941)). In determining the applicability of the Clayton Act as a bar to an injunction, the United States Supreme Court held that "relief by injunction operates in futuro and the right to it must be determined *at the time of the hearing* * * *." (Emphasis added.) *American Steel Foundaries v. Tri-City Central Trades Council*, 257 U.S. 184, 66 L.Ed. 189, 184 S.Ct. 213 (1921). The power of a court to grant injunctive relief survives the discontinuance of the illegal conduct, but the moving party must satisfy the court that relief is needed. (*United States v. W. T. Grant Co.*, 345 U.S. 629, 97 L.Ed. 1303, 73 S.Ct. 894 (1953).) "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." 97 L.Ed. 1303, 1309. Also see *LeClair v. Shell Oil Co.*, 183 F.Supp. 255 (S.D. Ill. 1960).

Where violence and destruction of property accompanied picketing, the United States Supreme Court upheld an Illinois injunction against all picketing where the Illinois Supreme Court had found peaceful acts of picketing to be a part of a coercive thrust entangled with acts of violence. (*Milk Wagon Drivers Union Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 85 L.Ed. 836, 61 S.Ct. 552, 132 A.L.R. 1200 (1941).) There Justice Frankfurter held that State courts may protect against future unlawful coercion on the basis of an inference of the continuing threat of past misconduct, but that the right to free speech in the future cannot be forfeited because of disassociated acts of past violence. As early as 1934, the Illinois Supreme Court in upholding the constitutionality of our Anti-Injunction Statute, stated, "The mere fact that acts of violence had been previously committed would of itself furnish no justification for * * * restraining the displaying of the placards." *Fenske*

*Bros., Inc. v. Upholsterers International Union Local 18,* 358 Ill. 239, 260, 193 N.E. 112, 97 A.L.R. 1318 (1934), *cert. denied,* 295 U.S. 734, 79 L.Ed. 1682, 55 S.Ct. 645 (1935).

Although the case before us involved no violence and the scope of the injunction was broader than those in the picketing cases, we believe the same principles of law must govern the power to issue a permanent injunction here. The dispute which gave rise to the unlawful strike having been settled, the only question before the trial court was whether on June 20, 1974, there existed a reasonable expectation or threat of another unlawful teachers strike. Plaintiff had the burden of establishing "some cognizable danger of recurrent violation." *United States v. W. T. Grant Co..*

As reason for granting the permanent injunction, the trial judge stated, "I don't see any bad faith here on behalf of anyone at this time. There is no evidence in the record that the school teachers intend to strike again. But the basis is there. The same things are still existing as existed back in August." This latter statement presumably refers to the fact that the parties were once again negotiating a contract. However, the circumstances surrounding the negotiations were materially different in June of 1974. Peoria schools were not in session and the parties were still bound by the 1973-74 contract which did not expire until August 1, and which contained a no-strike clause. The mere fact that the teachers had raised some of the same demands as had been rejected the previous year, and that the negotiating parties were not then close to a final agreement does not justify a conclusion that there was a cognizable danger of another strike. The testimony in the record shows that the teachers had decided to postpone some of their proposals for a year. Where teachers are employed under an annual contract, there is seldom a time when negotiations are not in progress, and, in fact, 1974-75 negotiations began in January, 1974, barely 2 months after the 1973-74 contract was signed. To conclude that the facts here support an anti-strike injunction could seem to require courts to issue such an injunction any time negotiating parties (one of whom has previously engaged in an illegal strike), have not yet reached agreement. We believe the trial court's reliance on the *Piano & Organ Workers* case was misplaced, and that the court failed to consider later cases which require a determination based on the circumstances existing at the time of the hearing.

In a Michigan case similar to the case before us, a permanent injunction was held improper because the strike which formed the subject matter of the complaint had been resolved. (*Crestwood School District v. Crestwood Education Ass'n,* 382 Mich. 577, 170 N.W.2d 840 (1969). See also *School District v. Holland Education Ass'n,* 380 Mich. 314, 157 N.W.

2d 206 (1968).) The precise question of whether a contract settlement rendered a case moot was considered in *Phillips v. Board of Education*, 23 Ill.App.3d 124, 318 N.E.2d 687 (5th Dist. 1974). There the teachers sought to enjoin the school board from requiring performance of non-teaching duties without extra pay. The dispute was settled by inclusion of extra pay in the teachers' contract before the hearing in the trial court, and, on review, the appeal was dismissed because there was no existing controversy.

We conclude that the permanent injunction in this case was erroneously issued, and must be vacated. Accordingly we reverse the order of the circuit court, and remand the cause with directions to set aside the injunction and to dismiss plaintiff's complaint.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.