127 Ill. App.3d 405 (1984)
468 N.E.2d 1316
THE PEOPLE ex rel. TYRONE C. FAHNER, Attorney General, et al., Plaintiffs-Appellees,
v.
THE CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.
No. 82-934.
Illinois Appellate Court  First District (3rd Division).
Opinion filed September 5, 1984.
*406 *407 Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Richard W. Burke, Christopher R. Manning, and Thomas F. Winters, of counsel), for appellant.
Tyrone C. Fahner, Attorney General, of Springfield, pro se (James S. Montana, Jr., Assistant Attorney General, of counsel), for appellees.
Order affirmed.
JUSTICE McGILLICUDDY delivered the opinion of the court:
This action was brought on behalf of the people of the State of Illinois by Attorney General Tyrone C. Fahner and Edward F. Callahan, Director of the Department of Financial Institutions (the State), against the Chicago Transit Authority (CTA), for recovery of abandoned property in the CTA's possession, pursuant to the Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1981, ch. 141, par. 101 et seq.) (the Act).
In the ordinary course of its business, the CTA has accumulated in its general fund payroll, vacation, sick leave and bonus checks which have remained unclaimed by employees and former employees. To resolve this problem, the CTA on November 7, 1979, enacted Ordinance No. 79-131, which provides:
"WHEREAS, from time to time the Authority is obligated to pay monies and benefits to employees and to former employees who cannot be located; and
WHEREAS, it is now necessary to prescribe the steps to be taken in regard to the disposition of said monies; now therefore:
BE IT ORDAINED BY CHICAGO TRANSIT BOARD OF CHICAGO TRANSIT AUTHORITY:
SECTION 1. In the event that an employee, former employee or beneficiary designated by an employee does not claim any monies and benefits due from the Authority to said employee, former employee and beneficiary within a period of three years after the date the monies or benefits became due and payable, said employee, former employee or beneficiary so designated shall have no further claim to said benefits and the Authority shall distribute said benefits to the heirs at law, if any, of said employee or former employee. If the heirs at law of said employee *408 or former employee do not claim said monies or benefits within a period of four years after the monies or benefits first became due and payable to the employee or former employee or designated beneficiary, the monies and benefits shall remain assets of the Authority without being subject to further claim by the employee, former employee, designated beneficiary, heirs at law of the former employee or any governmental body.
SECTION 2. This ordinance shall be in force and effect from and after its passage." (Emphasis added.) Chicago Transit Authority Ordinance No. 79-131 (November 7, 1979).
The State filed this action, alleging that the unclaimed property covered by CTA's Ordinance No. 79-131 is abandoned personal property covered by the Act. Counts I and II of the complaint sought judgment declaring the CTA subject to the Act and declaring Ordinance No. 79-131 void, as well as a mandatory injunction requiring the CTA to comply with the Act. Counts III and IV, which prayed for interest on the funds subject to the Act, and a penalty, are not at issue in this appeal.
The CTA made a motion to dismiss the complaint, alleging that the property in question belonged to the CTA in accordance with its Ordinance No. 79-131. On March 17, 1982, the trial court denied the motion as to counts I and II, finding that the Act applied to unclaimed property held by the CTA and that Ordinance No. 79-131 was invalid and unenforceable as being in direct conflict with the Act. The trial court granted the motion as to counts III and IV. The CTA appeals. The issues presented for review are: (1) whether the property in the custody of the CTA representing unclaimed wages owed by the CTA to its employees, former employees and/or their beneficiaries is subject to the provisions of the Act, and (2) whether CTA Ordinance No. 79-131 is valid.
 1 The CTA contends that the property in its custody does not fall within the purview of the Act. The Act provides generally that certain property be presumed abandoned after seven years and that the holder thereof must follow a procedure which ultimately places such property in the custody of the State. (People ex rel. Callahan v. Marshall Field & Co. (1980), 83 Ill. App.3d 811, 404 N.E.2d 368.) The Act protects the rights of unknown owners and gives the benefit of the use of the unclaimed property, most of which experience shows will never be claimed, to the State rather than the holders. (See People ex rel. Callahan v. Marshall Field & Co. (1980), 83 Ill. App.3d 811, 404 N.E.2d 368; Douglas Aircraft Co. v. Cranston (1962), 58 Cal.2d 462, 374 P.2d 819, 24 Cal. Rptr. 851.) The Act provides, in *409 pertinent part, as follows:
"Sec. 1. As used in this Act, unless the context otherwise requires:
* * *
(b) `Business association' means any corporation (other than a public corporation), * * *."
"Sec. 2a. Business associations shall report all property and any earnings thereon which has [sic] remained unclaimed for 7 years and is [sic] therefore presumed abandoned. This property shall consist of, but is not limited to: (1) unclaimed wages * * *."
"Sec. 8. All funds and intangible personal property held for the owner by any * * * public corporation * * * that has [sic] remained unclaimed by the owner for more than 7 years is [sic] presumed abandoned." (Ill. Rev. Stat. 1981, ch. 141, pars. 1, 2a, 8.)
It is undisputed that the CTA is a public corporation. See Stine v. Chicago Transit Authority (1973), 13 Ill. App.3d 219, 300 N.E.2d 548.
 2 The CTA first argues that because section 2a of the Act is expressly inapplicable to the wages of employees of public corporations, the CTA is excluded from coverage thereunder. The State does not contradict this assertion. The CTA further points out that section 2a is the only portion of the Act which specifically mentions unclaimed wages. Therefore, reasons the CTA, where unclaimed wages are the issue, any other potentially applicable provision of the Act which does not specifically mention unclaimed wages should defer to section 2a. In support of its argument, the CTA relies on Sawyer Realty Group, Inc. v. Jarvis Corp. (1980), 91 Ill. App.3d 1134, 1137, 415 N.E.2d 565, rev'd on other grounds (1982), 89 Ill.2d 379, 432 N.E.2d 849, which recited the general rule of statutory construction that the expression of one thing in a statute implies the exclusion of all others.
We cannot agree that the mention of unclaimed wages in section 2a precludes the application of any other section of the Act to unclaimed wages. Section 2a requires business associations to report abandoned property which "shall consist of, but is not limited to" unclaimed wages and six other specific items. Other sections set the requirements regarding abandoned property for banking and financial organizations (section 2); life insurance companies (section 3); utilities (section 4); and courts, public corporations, public authorities and public officers of the State (section 8). The fact that section 2a is the only one which expressly includes unclaimed wages cannot be interpreted as indicative of an intent to exempt unclaimed wages not held by a *410 business association from the unclaimed property rules. The exclusion of unclaimed wages not held by a business association would do nothing to further the purpose of the Act. Moreover, the fact that section 2a refers specifically to unclaimed wages while section 8 refers generally to funds and intangible property is without benefit to the CTA, since section 2a applies to business associations and section 8 applies to public corporations.
Since the CTA is a public corporation, we look to section 8 of the Act. Section 8 requires that funds and intangible personal property held for the owner by any public corporation which remain unclaimed for seven years be presumed abandoned. It is evident that the monies addressed on Ordinance No. 79-131 are subject to section 8.
The CTA resists this application of the Act, arguing that a construction which would render any sentence, phrase or word used in the statute superfluous, void or insignificant should be avoided. (Hazelton v. Zoning Board of Appeals (1977), 48 Ill. App.3d 348, 363 N.E.2d 44.) The task of the reviewing court in statutory construction was aptly described in Callahan:
"The cardinal rule governing statutory construction is that we must give effect to the intention of the legislature as expressed in the statute. (Young v. Mikva (1977), 66 Ill.2d 579, 363 N.E.2d 851; Mallin v. Najarian (1979), 76 Ill. App.3d 441, 395 N.E.2d 172.) The intention of the legislature should be sought primarily from the language employed. (Certain Taxpayers v. Sheahen (1970), 45 Ill.2d 75, 256 N.E.2d 758.) Where the language of the statute is clear and unambiguous, our only function is to enforce the law as enacted by the legislature. (Harvey Firemen's Association v. City of Harvey (1979), 75 Ill.2d 358, 389 N.E.2d 151.) Moreover, we are not authorized to depart from the plain language of a statute by reading in exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. Certain Taxpayers v. Sheahen." People ex rel. Callahan v. Marshall Field & Co. (1980), 83 Ill. App.3d 811, 813-14.
 3 We find the language of the Act to be clear and unambiguous. It states that business associations must report wages that have remained unclaimed for seven years and are therefore presumed abandoned. The Act also states that funds and intangible personal property held for the owner by any public corporation that have remained unclaimed for more than seven years are presumed abandoned. Our only function, then, is to enforce the plain meaning of these provisions.
*411  4 The CTA contends that the use of the phrase, "held for the owner," in section 8, as opposed to the phrase, "held or owing," which was employed in sections 2, 3, 4 and 5, indicates legislative intent to include only property in the custody of the public entity and not unclaimed wages. We do not glean such intent from the wording of the Act.
A plain reading of section 8 reveals that it encompasses situations such as the one at bar. All funds and intangible personal property held for their owners by a public corporation, such as the CTA, that have remained unclaimed by their owners for more than seven years are presumed abandoned. We find that this language includes unclaimed wages. As such, the unclaimed wages are subject to the Act, and the CTA must comply with the procedures outlined therein.
The CTA next asserts that unclaimed wages in the hands of a public corporation are not subject to section 9 of the Act. Section 9 is the "catch-all" provision relating to unclaimed personal property not otherwise covered by the Act. In view of our determination that the property at issue here is covered by section 8, it is not necessary to address this contention.
The CTA alleges that even if the Act is applicable to the property covered by Ordinance No. 79-131, the ordinance is valid because it was properly enacted pursuant to the CTA's powers. As a municipal corporation, the CTA has only those powers expressly vested therein by the legislature, and those necessarily implied from or incident to those expressly granted powers. (Stine v. Chicago Transit Authority (1973), 13 Ill. App.3d 219, 300 N.E.2d 548.) The Metropolitan Transit Authority Act (Ill. Rev. Stat. 1981, ch. 111 2/3, pars. 301 through 345) (MTAA) authorizes the CTA to acquire any property useful for its purposes (par. 308). It also grants the CTA the right to establish special funds and to provide for the custody, disbursements and application of any monies in these funds (par. 340). The MTAA further authorizes the CTA to enact ordinances to carry into effect these powers (par. 331).
 5, 6 Municipal authorities cannot, however, under a general grant of power, adopt ordinances which infringe on the spirit of a State law or are repugnant to the general policy of the State. (Huszagh v. City of Oak Brook Terrace (1968), 41 Ill.2d 387, 243 N.E.2d 831.) A municipal ordinance cannot add to, subtract from, modify or affect the provisions of the statute (Traders Development Corp. v. Zoning Board of Appeals of Peoria County (1959), 20 Ill. App.2d 383, 156 N.E.2d 274), and if it is in conflict with a statute it is void (Huszagh v. City of Oak Brook Terrace (1968), 41 Ill.2d 387, 243 N.E.2d *412 831; see Billik v. Village of Brookfield (1980), 80 Ill. App.3d 907, 400 N.E.2d 702; People v. Perry (1975), 27 Ill. App.3d 230, 327 N.E.2d 167). 8 Ill. L. & Prac. Cities, Villages & Other Municipal Corporations sec. 138 (1953).
 7 Ordinance No. 79-131 constitutes an attempt to prevent the unclaimed property in the general fund of the CTA from passing to the State pursuant to the Act. Because the ordinance modifies the provisions of the Act requiring public corporations to remit unclaimed property to the State, it is in conflict with the Act and is invalid.
Relying on Lustfield v. Chicago Transit Authority (1951), 408 Ill. 404, 97 N.E.2d 347, the CTA argues that the MTAA gave it full power to conduct the business of managing, regulating and operating a transportation system in Chicago. In addition, the CTA cites Stine for the proposition that Ordinance No. 79-131 should be examined in light of the powers granted the CTA by the MTAA. The CTA's reliance on these cases is misplaced, as neither discusses the validity of an ordinance which conflicts with a statute.
 8, 9 Finally, the CTA contends that Village of Glencoe v. Jackson (1968), 102 Ill. App.2d 65, 243 N.E.2d 865, requires a finding that an ordinance is unreasonable, arbitrary or oppressive before it is struck down. In fact, the court in Village of Glencoe stated only that it would not hesitate to invalidate an ordinance which appears unreasonable, arbitrary and oppressive. Similarly, we do not hesitate to invalidate Ordinance No. 79-131, as it is in contravention of the Act. Where a private agreement is in fundamental conflict with public policy as established by the legislature, the private agreement must fall. Price v. State Farm Mutual Automobile Insurance Co. (1983), 116 Ill. App.3d 463, 452 N.E.2d 49.
For the foregoing reasons, the order of the circuit court of Cook County is affirmed.
Affirmed.
McNAMARA and WHITE, JJ., concur.