SHIRLEY M. BELKE, on behalf of herself and others similarly situated, Plaintiff-Appellant, v. THE COUNTY OF PEORIA *et al.*, Defendants-Appellees.

Third District   Nos. 3—88—0060, 3—88—0135 cons.

Opinion filed May 13, 1988.

Gregory P. Sujack, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (Phillip Lenzini, of counsel), for appellants.

John A. Barra, State's Attorney, of Peoria (Roberta L. Szydlowski, Assistant State's Attorney, of counsel), for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

This case is a consolidation of two interlocutory appeals pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)). The action is based upon a complaint filed on November 16, 1987, by the plaintiff, Shirley Belke (a registered voter residing in Peoria and a Peoria county board member), seeking a writ of *mandamus* ordering a referendum be held regarding the accumulation of tax funds by the defendant, County of Peoria (County), and seeking a permanent injunction prohibiting further accumulation without authority. On December 23, 1987, the plaintiff sought a preliminary injunction preventing the expenditure of the accumulated funds. On January 22, 1988, the trial court denied the injunction and dismissed the complaint with leave to file an amended complaint. From that denial order the plaintiff filed the original interlocutory appeal in this case. The second such appeal arises from the trial court's denial of a motion for a temporary restraining order filed in and disposed of by the trial court during the pendency of this court's review of the initial appeal.

The complaint in the instant case and the orders now under review arose subsequent to the County's decision to renovate and expand its present courthouse and finance the project out of property tax revenues. On January 14, 1986, the County and the Public Building Commission of Peoria (PBC) had entered into an agreement for a joint project to renovate the present Peoria County courthouse and

build an administrative building across from the courthouse square. It was the intention of the PBC to finance the project through public building nonreferendum bonds. Differences of opinion arose between the County and the PBC concerning the project. In October of 1986 the County decided that the site of the administrative office building would be changed to the courthouse square, a purely legislative decision exclusively within the purview of the county board. The PBC refused to finance the project as it was then designed.

In order to understand the background of this proceeding, the following constitutes a synopsis of the relevant events that transpired after that point in time: (1) November 14, 1986, the County requested property tax revenue from the corporate general fund in the amount of $710,548.00 for use during fiscal year 1987; (2) November 17, 1986, the county board chairman recommended that the board appropriate $2 million for the fiscal year 1987 budget for the courthouse project, subject to abatement if the County and the PBC reconciled their differences; (3) November 17, 1986, the resolution to levy the $2 million was adopted (both parties in their briefs, arguments and pleadings erroneously refer to this levy as the 1986 tax levy; the levy for fiscal year 1987 is more properly called the 1987 levy, and such term is the one used throughout this opinion); (4) November 25, 1986, the county board enacted a tax levy ordinance for fiscal year 1987; (5) November 30, 1986, fiscal year 1986 ended; (6) March 31, 1987, the county extended and assessed the 1987 tax levy, including the $2 million, and collected such taxes thereafter; (7) November 30, 1987, fiscal year 1987 ended and $1,770,170.76 remained in the corporate fund.

Initially, regarding the instant appeals, we address the propriety of the trial court's denial of the plaintiff's motion for a preliminary injunction. The injunction sought to prevent the County from expending the tax funds on hand and undertaking the building project until an approval by referendum was obtained.

■ A preliminary injunction is the primary means of obtaining injunctive relief prior to trial on the merits, which relief is exceptional in its own right. (*Paddington Corp. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484.) The standards for issuing preliminary injunctions involve a variety of circumstances, but generally the court must be satisfied that: (1) the plaintiff possesses a clearly ascertained right which needs protection; (2) she will suffer irreparable harm without the injunction; (3) there is no adequate remedy at law for her injury; and (4) she is likely to be successful on the merits of her action. (*Central Building & Cleaning Co. v. Vodnansky* (1980), 84 Ill. App. 3d 586, 406 N.E.2d 32.) In addition, the court

must conclude that the grant of temporary relief outweighs any possible injury which the defendant might suffer by its issuance. (*Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953.) The party seeking the injunction has the burden of proving the necessity therefor. *Board of Education of City of Peoria School District No. 150 v. Peoria Education Association* (1975), 29 Ill. App. 3d 411, 330 N.E.2d 235.

■ The decision of whether to grant the preliminary injunction rests within the sound discretion of the trial court, with appellate review restricted to determining whether the trial judge correctly exercised his broad discretionary powers. (*Hoover v. Crippen* (1987), 151 Ill. App. 3d 864, 503 N.E.2d 848.) A reviewing court will not reach the merits in an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), as the only justiciable issue is whether the court properly granted the preliminary injunction. However, as the grant or denial of the motion under review will, in effect, determine this litigation and thus afford the same relief sought to be obtained by the judgment, the injunction should be granted with great caution and only where it is clearly required.

It is the plaintiff's position that only three methods of public financing exist under which the County may obtain funds to build the proposed courthouse:

> (1) Referendum-approved general obligation bonds. (Ill. Rev. Stat. 1985, ch. 34, par. 306.)
>
> (2) Nonreferendum financing pursuant to the Public Building Commission Act (Ill. Rev. Stat. 1985, ch. 85, par. 1031 *et seq.*).
>
> (3) Referendum-approved accumulation of general corporate taxes. (Ill. Rev. Stat. 1985, ch. 34, par. 409.5.)

The underlying complaint filed in the trial court on November 16, 1987, alleges that the County is statutorily required to hold a referendum on the accumulation of funds levied in 1986, for fiscal year 1987, and not substantially spent for building purposes by the close of such fiscal year. The plaintiff contends that the County's accrual of general corporate taxes for the renovation of the county courthouse violates section 25.05—6 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1985, ch. 34, par. 409.5), which requires a referendum for an accumulation of surplus of general corporate taxes for building purposes. The language of section 25.05—6, upon which the plaintiff relies, reads:

> "[S]ubject to the referendum provisions of this Section, a county of less than 500,000 inhabitants may accumulate a surplus of general corporate taxes for building purposes ***.

The county board \*\*\* may provide for submission to the electors of a proposition to accumulate a surplus from the tax levy for general corporate purposes for a specified building project to be undertaken by the county when such accumulation is sufficient to pay for the project." Ill. Rev. Stat. 1985, ch. 34, par. 409.5.

However, the County contends that it has proceeded on a "pay as you go basis" to finance the courthouse project. The funds used for the courthouse do not represent a surplus of general corporate taxes. It asserts that section 25.05—6 only contemplates the situation where there is a plan to "save up" or "stockpile" surplus general corporate taxes until there are sufficient monies to pay for the building project in full when undertaken.

Section 25.05—6 has never been construed by a reviewing court in this State. The focus of our inquiry pertains solely to the financing procedures employed to fund the building project and whether the retention of public revenues under the facts of this case requires a referendum.

■■ ■ It is clear that no constitutional right to a referendum exists regarding the mere construction or enlargement of the courthouse. (See *People ex rel. Stamos v. Public Building Comm'n* (1968), 40 Ill. 2d 164, 238 N.E.2d 390.) Nevertheless, we recognize that the fixed policy of the State of Illinois is not to permit the unnecessary accumulation of monies in the public treasury. We acknowledge that the County of Peoria is not entitled to accumulate an excess surplus of funds without referendum. Yet, it is the law that public authorities have the right and duty to use sound business judgment in estimating the amount of taxes required to be levied in each year to meet necessary expenses as they mature. See *People ex rel. Wilson v. Wabash Ry. Co.* (1938), 368 Ill. 497, 14 N.E.2d 650.

■ Appealing the disposition of the motion, the plaintiff contends that section 25.05—6 creates an explicit, certain, and clearly ascertainable right to vote to approve or reject the proposition to accumulate the alleged surplus of funds for the courthouse project. After a complete examination of the record, we cannot agree that the statute applies to the financial reserves currently held by the County of Peoria at the close of fiscal year 1987, *i.e.*, $1,770.170.76. We are compelled to conclude that the primary criterion upon which to issue injunctive relief, *i.e.*, the possession of a clear right in need of protection, has not been met by the plaintiff and a remedy in equity is not warranted by the facts before this court.

The record before us indicates that at the time the County levied

the tax at issue it fully expected to expend the funds in the next fiscal year. At that point in time it had estimated that amounts equal to the levy were to be obligated and in fact paid during the period the funds were collected or prior to the receipt of the subsequent year's tax levy proceeds. The revenues remaining in the corporate fund occurred as an indirect result of unintentional delays, and not the result of a deliberate plan to accumulate surplus funds.

Ultimately, there is insufficient evidence of record, both before and after the levy and collection of funds, to establish an illegal accumulation of funds in violation of section 25.05—6. Rather, the $1,770,170.76 remaining in the corporate tax fund at the end of fiscal year 1987 and carried over to fiscal year 1988 represents unspent monies earmarked for projected expenses to be incurred in the construction of the courthouse. The delays in beginning the construction were unforeseeable and unintended. When the levy was made it was done in anticipation of substantial expenditure or potential abatement in fiscal year 1987.

In the context of tax objection cases, a definition of "accumulation" has emerged which equates that term with amounts which exceed two to three times the foreseeable expenditures of the taxing body. This proposition is discerned from the supreme court's review of two rulings on tax objections in *Central Illinois Public Service Co. v. Miller* (1969), 42 Ill. 2d 542, 248 N.E.2d 89. In *Central Illinois Public Service Co. v. Miller* the court held that a levy for general assistance was unjustified where the amount on hand in the general assistance fund was 2.84 times the three-year annual average spent and 3.24 times the amount expended in the last previous fiscal year. The court determined that the amount on hand in the general assistance fund, together with the funds due from the previous year's levy, made a levy for the year in question unnecessary and resulted in an illegal accumulation of monies. Subsequent to the high court's decision in *Miller*, this court held in *In re Application of O'Connor* (1980), 80 Ill. App. 3d 354, 399 N.E.2d 683, that an illegal accumulation had occurred where a town fund was 2.9 times the previous year's expenditures and 2.9 times the average expenditure of several years.

These cases, dealing with tax objections, provide useful guidelines in defining "accumulated surplus" as that term is contemplated in section 25.05—6. Furthermore, merely carrying over funds to the following fiscal year does not entail an accumulation of surplus taxes; the latter concept encompasses elements of size as well as continuous and repeated additions. We emphasize that the statute has no application to the case before us today based upon the stipulated facts. Fur-

ther analysis of the characteristics and parameters of an accumulation of surplus of general taxes need not be undertaken at this time.

■ Summarily, it is the opinion of this court that the plaintiff has not shown, either by allegation or proof, that she possesses any recognized right for which she would be entitled to the protection of a preliminary injunction. The failure to meet this criterion is dispositive and we decline to address the remaining elements necessary for preliminary injunctive relief under the pleadings and evidence of this case.

Furthermore, we decline to address the merits of the plaintiff's appeal of the trial court's denial of a temporary restraining order requesting preservation of the *status quo pendente lite*. A determination on this matter will have no practical effect on this litigation in light of our affirmance of the denial of the preliminary injunction.

For all the foregoing reasons, the judgment of the circuit court of Peoria County denying the preliminary injunction is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.